Jones *v.* Jones.

## JONES *vs.* JONES.

It is not a matter of right, under all circumstances, for a wife who has commenced a suit for a divorce, or for a separation, to require the court to direct an allowance to be paid to her, by the defendant, for the purpose of defraying the expenses of the suit. Nor is it a matter of right that she should be allowed her ad interim alimony, in all cases. But the legislature has left the allowance of both to the sound discretion of the court.

Where it is probable, however, that the wife may succeed—especially in a suit for a divorce on the ground of the adultery of the husband—in which the wife is allowed to prosecute in her own name, and where it appears that she is entirely destitute of the means of carrying on her suit, it is almost a matter of course to require the husband to make her a reasonable allowance, according to his ability, for the necessary expenses of the suit.

It is also a matter of course, in such a case, to require the husband to furnish her with the necessary clothing and sustenance, during the pendency of the suit, if he is able to do so.

---

*Jones v. Jones.*

---

The same general principles are applicable to suits brought by the wife against the husband, for a separation from bed and board, on the ground of cruel treatment, or of abandonment. But in this class of cases the wife cannot institute a suit against her husband without the assistance of a responsible person as her next friend; who is to be answerable to the defendant, for the costs of the litigation, if the complainant fails in the suit. And the court, in cases of this nature, will not direct an advance to be made to the wife, or to the next friend, for the purpose of carrying on the suit, or for alimony pendente lite, where there is no probability that the complainant will be able to succeed in her suit.

THIS was an application, by the complainant, and by her next friend, for ad interim alimony; and for an advance of money, to be made by the defendant, to enable them to carry on this suit, against him, for a separation from bed and board.

*J. A. Collier* for the complainant.

*Ira Harris*, for the defendant.

THE CHANCELLOR. It is not a matter of right, under all circumstances, for the wife who has commenced a suit for a divorce, or for a separation, to require the court to direct an allowance to be paid to her, by the defendant, for the purpose of defraying the expenses of the suit. Nor is it a matter of right that she should be allowed her ad interim alimony, in all cases. The legislature has left the allowance of both to the sound discretion of the court before which the suit is instituted. (2 *R. S.* 148, § 57.) Where it is probable, however, that the wife may succeed, especially in suits for divorce on the ground of adultery of the husband, in which the wife is allowed to prosecute in her own name, and where it appears that she is entirely destitute of the means of carrying on her suit, so as to obtain justice, without a resort to the property of the husband for that purpose, it is almost a matter of course to require him to make her a reasonable allowance for the necessary expenses of the suit; having a due regard to the value of his property, the amount of his income from his own exertions, and the necessary support of himself and others who have claims upon him for subsistence. And, as it would be improper for the complainant

to cohabit with her husband, during the pendency of such a suit, if she is unable to provide for her own subsistence and he has the means of supporting her, it is also a matter of course to require him to contribute of those means to furnish her with the necessary clothing and sustenance ; until it can be legally ascertained whether her charge of adultery against the defendant is true or false.

The same general principles are applicable to suits brought by the wife against the husband, for a separation from bed and board, on the ground of cruel treatment, or of abandonment. But in this last class of cases the legislature has not thought proper to allow the wife to institute a suit against her husband, without the assistance of a responsible person as her next friend; who is answerable to the defendant for the costs, which the latter may be put to by the commencement and prosecution of such suit, in case it eventually appears that the same was instituted against the husband without any sufficient cause. Any other course of proceeding, indeed, would be very liable to disturb the peace of families, by encouraging improper suits, for slight and trivial causes. The court, therefore, in cases of this class, ought not to direct an advance to the next friend, for the purpose of carrying on the suit, where there is no probability whatever that the complainant will eventually be able to succeed. For it would be a useless burthen upon the defendant, to compel him to pay money to the next friend of the complainant, to carry on the suit against her husband, where it was morally certain that the next friend would be obliged to refund such money, with interest, at the termination of the suit. And this appears to me to be such a case.

Every allegation of cruelty charged in the bill, is positively denied by the defendant in his sworn answer. And as the complainant states that all the specific acts of cruelty, set forth in the bill, except the last, took place when no one was present but herself and her husband, it is perfectly evident that she must fail as to them. Indeed she could not have expected to succeed upon those charges, when she filed her bill. For though she admits, in substance, that she has no means of proving

them, except by a discovery from the defendant, yet she expressly waives a discovery from him. The third charge in the bill relates to the alleged cruelty of the defendant, on the night of the 13th of September, 1845 ; when she says no one was present but herself and her husband, and two boys, Ayrault and Thorp, who were about fifteen years of age. Here, if the allegations in the bill are true, the defendant was guilty of acts of cruelty and brutality towards her, which it is hardly possible to believe any person in human form could have committed. But here, too, it appears, from the affidavits of these boys, which are produced by the defendant in opposition to this application, that every material allegation in the bill as to what took place on that occasion, is absolutely false and groundless; and that the defendant, upon that occasion, did much less than his duty to himself required him to do. It is sufficient to say that those affidavits corroborate the answer of the defendant, as to what took place on that occasion; and show that the wife's conduct towards her husband, on that stormy night, was most brutal, and disgraceful to her as a woman.

It may be proper to observe that an affidavit, purporting to have been sworn to by one of these boys, is produced in behalf of the complainant, upon this application, which fully supports her allegations. But in his subsequent affidavit he says he has seen a copy of that affidavit, purporting to have been made by him, and that he never intended to swear to many things stated therein ; and that it must have been read over to him in such a manner that he did not understand it. He then goes on to contradict in detail every material statement, as to improper conduct on the part of the defendant, which is contained in his affidavit on the part of the complainant. Whether the first affidavit was fraudulently misread to this witness, or was sworn to by him understandingly as containing the material facts of the case, is wholly immaterial to the question now under consideration. For if he has been tampered with by the defendant, to contradict under oath what he knew to be the real facts of the case, no court could make a decree for a separation founded

Jones *v.* Jones.

upon his testimony alone, or even upon testimony of himself and Thorp, supporting the allegations in the bill. For, if they should be called by the complainant and prove those allegations, their affidavits, which were read upon this application, would be sufficient to discredit their testimony in her favor, entirely and effectually.

The complainant also produces the affidavit of Barnes, to prove reproachful language and threats of violence, from the defendant to his wife, in May, 1845. But his general character for truth and veracity is impeached by six witnesses. That, however, is not a sufficient ground for rejecting this application; as his credibility may be sustained upon the taking of the testimony in the cause. The real objection to his affidavit is, that it relates to alleged acts of cruelty which are not stated by the complainant, in her bill, with sufficient certainty to enable the court to found any decree of separation upon them. As there is not the least probability, therefore, that the complainant can succeed in this suit, under any circumstances, it would not be a proper exercise of the discretion of the court to order the defendant to advance money to the next friend of the complainant to aid her in the further prosecution of this cause.

For the same reason, it is not a proper case for the allowance of alimony pendente lite. Besides, it appears that the complainant is as competent to earn her own livelihood, while she chooses to remain separated from her husband, as he is to support himself, and his infant child, without her assistance; although he has some property, which produces an income of about $70 per annum.

This application must therefore be denied, with taxable costs; to be paid by the next friend of the complainant.