## FASSETT a. TALLMADGE.

*Supreme Court, First District; General Term, May,* 1863.

CREDITOR'S ACTION.—ACCOUNTING BY FRAUDULENT ASSIGNEE.—
PLEADING.—APPEAL.—AMENDMENT.

A judgment creditor of a partnership, after insolvency of the partnership and its
members, may maintain an action against them and a fraudulent assignee who,
with knowledge of the insolvency and the equities of creditors, and with
intent to defraud the creditors, has taken an assignment of the partnership
property, to compel the latter to account, as a trustee, for the assets, and have
the fund distributed among all creditors who are entitled to share in the fund,
and who may come in and contribute to the expenses of the action. And in
such action it is not necessary to aver or prove the issue of an execution. The
action does not depend on the existence of a lien, or the failure of the remedy
at law, but on the equitable rights of the plaintiff as a *cestui que trust,* arising
out of the insolvency and fraud.

*It seems,* that such an action might be maintained by a simple contract creditor.

There is no reason why, in such a case, the creditors should be compelled to
bring numerous useless suits at law, when they can all prove their claims in
the one suit in equity.

In such an action, the objection that the complaint does not allege the insol-
vency of the individual partners cannot be taken for the first time on appeal
from the final judgment, after answering and trial.

A verbal error in the interlocutory order for judgment, and in the final judgment,
in describing the assignment, if of such a nature as not to prejudice the parties,
may be disregarded on appeal, or may be treated as amended.

Appeal from a judgment.

This action was an action for an accounting and distribution
of partnership assets; and was brought by Elias Fassett against
Samuel W. Tallmadge and others.

In 1851, the defendants, J. J. Tallmadge, Howell, and
Bowers, were partners in the forwarding business, and, as such,
owned, among other property, the "Western Lake Boat Line
of Canal Boats." They did business in New York, under the
name of R. L. Howell & Co., and in Buffalo, under that of
Bowers, Tallmadge & Co.

They had a business connection at Oswego with Benjamin

Isaacs, who conducted a warehousing and shipping business in the name of Bowers, Isaacs & Co., at that place.

On the 30th January, 1852, the business of the season having closed, Bowers sold out to J. J. Tallmadge his interest in all three firms, and on the 11th February, 1852, J. J. Tallmadge and Howell sold the property of the firms of R. L. Howell & Co. and Bowers, Tallmadge & Co., including any interest which those firms might have in the firm of Bowers, Isaacs & Co., to the appellant. On the same day the appellant conveyed one-half of his interest in the property sold, to Geo. W. Rogers, for a valuable consideration.

Elias Fassett, the respondent, was not at this time a judgment creditor of any of these defendants individually, nor of the firms above mentioned. His attorney commenced an action on the 13th October, 1857, in his name, against the defendants, J. J. Tallmadge, Howell, and Bowers. The complaint in that action was for $300, alleged to have been loaned J. J. Tallmadge, Howell, and Bowers, by Fassett, November 17, 1851. It alleged also that they were at the time copartners in business under the two several firm names of Ralph L. Howell & Co., and Bowers, Tallmadge & Co. It was verified by the attorney, and, together with the summons, was served personally on J. J. Tallmadge, in Wisconsin, October 26, 1857. Bowers admitted personal service, October 17, 1857. Howell was not served, and judgment against all three, for $443, was entered November 19, 1857, no defence having been interposed.

The suit now before the court was commenced November 23, 1857—four days afterward—as appears from the date of the summons and verification of the complaint. It purported to be a creditor's suit, to set aside the sale to the appellant of February 11, 1852, and was based on the judgment for $443 of November 19, 1857. There was no allegation in the complaint of the issuing and return of any execution upon the previous judgment. It appeared on the trial, subsequently, that one was issued to the sheriff, seven days after November 23, 1857, and returned *nulla bona* a month after this cause was at issue. The complaint did not contain any allegation that the defendants were individually insolvent, or that the judgment for $443 was unpaid, or that any of them, with the exception of Bowers, who admitted service of process, ever knew of its existence before

the commencement of this action. This suit was brought by the respondent, Fassett, " on behalf of himself, and all other creditors of the firm or several firms hereinafter set forth, who may be entitled to share in the assets hereinafter referred to, and who may come in and contribute to the expenses of this action." But there was no allegation in the complaint, nor any evidence or finding of the court, in this case, that the sale in question was invalid as between the parties to it—the appellant and his co-defendants, or as to the creditors of either of the impleaded defendants individually. The creditors whose claims were included in the referee's report, and provided for in the judgment, were not judgment creditors of the defendants nor of the firms mentioned. The report of the referee, and the judgment thereon, were, however, based upon the assumption that both the plaintiff and these creditors were creditors of the partnerships.

The complaint, after stating that prior to the sale of February 11, 1852, the defendants impleaded with the appellant, were copartners under the two several firm-names of Ralph L. Howell & Co., and Bowers, Tallmadge & Co., and were the owners of canal boats and other property, amounting to $60,000, set forth the judgment of $443, before referred to, and alleged that on and before February 11, 1852, these firms had become insolvent. It then averred that on that day, while the defendants, John J. Tallmadge, Ralph L. Howell, and Henry C. Bowers, were " so as aforesaid, indebted to the plaintiff and divers other persons," " the defendant John J. Tallmadge, acting for and on behalf of the aforesaid firms, fraudulently and for the special purpose of hindering, delaying, and defrauding the plaintiff in this action, and other creditors of said firm," made and executed the assignment of the property and assets of the several firms to the appellant. Then followed a copy of the instrument, and allegations of the appellant taking possession of the property under it, conducting the business in his own name, realizing $15,000 thereby ; that this was without the knowledge or consent of Howell and Bowers, but that they subsequently assented ; that no consideration was paid by appellant, that the defendants knew, at the time, that the firms were insolvent ; that further articles in writing were executed on March 20, 1852, which were part of the alleged fraudulent scheme ; and that

Fassett *a.* Tallmadge.

they were, and each of them was wholly null and void as to the plaintiff in this action, and all other creditors of the two firms named. The demand of relief was for judgment, declaring the sale void as to the plaintiff, "and all other creditors" of the two firms "similarily situated," and appointing a receiver, with an injunction interim.

The answer of the appellant, in substance, admitted the co-partnerships; denied the value of the property, and the indebtedness of the plaintiff Fassett, before the time of the sale sought to be set aside; admitted the execution of the assignment; denied the frauds alleged; and asserted the full concurrence of the principal creditors of the two respective firms. It admitted further, the conduct of the business by the appellant subsequent to the sale, in his own name; alleged the assignment was for the benefit of creditors; then averred that the sale of February 11, 1852, was unconditional, and that thereby the appellant became the owner of the property therein named; set up joint ownership of the property with one Rogers, as subsequent vendee of a half interest therein; and averred the disposal of all the assets prior to the commencement of this action. It then alleged that the complaint does not state facts sufficient to constitute a cause of action, and prayed dismissal thereof, with costs.

On the trial of this cause at special term, before Mr. Justice Sutherland, when the plaintiff had rested his case, the defendant, appellant, moved for a nonsuit; which was denied. The court rendered a decision in favor of the plaintiff, directing a reference to Hon. Wm. Mitchell, who subsequently made his report entitled in this and two other similar suits by one Rigney. Exceptions to this report were duly taken by the appellant, and overruled, and judgment finally rendered against the appellant for $25,484.04 (being for the entire amount of assets and property belonging to the said several firms, and transferred by them to the appellant), with costs. Exceptions to this, as also to the decision and findings of the court, were duly filed by the appellant, who appealed to the general term.

*Elbridge T. Gerry* and *Wm. Curtis Noyes*, for appellant.

*Wm. C. Hornfager* and *James W. Gerard*, for respondent.

SUTHERLAND, P. J.—It is plain that this action, and the proceedings and judgment in it, cannot be sustained as the ordinary action of a judgment-creditor, after a fruitless attempt to collect his judgment by execution, to discover and to enforce its payment out of the equitable assets of the judgment-debtor; or as the action of a judgment-creditor to remove a fraudulent obstruction to a levy of his execution upon leviable property of the judgment-debtor.

The property alleged to have been fraudulently disposed of by the judgment-debtors, was all personal property. It can hardly be said that the complaint alleges that an execution has been issued on the plaintiff's judgment; there is no allegation that an execution had been returned unsatisfied; and I think the inference from the evidence is, that an execution was not issued on the judgment until after the action was commenced. Of course, then, the plaintiff had no right to commence this action simply as a judgment-creditor, upon the equity that he had made a diligent attempt to collect his judgment at law, or upon the equity that he had acquired a lien upon the property alleged to have been fraudulently disposed of, by issuing an execution on his judgment.

But I did not at special term, and do not now regard this action as belonging to either class of actions before mentioned. I did not then, and do not now, look upon the action as brought by the plaintiff, as a judgment-creditor, either to enforce the payment of his judgment out of the equitable assets of the judgment-debtors, or to set aside the alleged fraudulent sale and transfer by the judgment-debtors to the defendant Samuel W. Tallmadge, so that the property alleged thus to have been fraudulently sold and transferred, might be sold under an execution on the plaintiff's judgment; or it, or the proceeds of it, might be directly applied by the decree or judgment in this action, to the payment of the plaintiff's judgment, or to the payment of the plaintiff's judgment and judgments of other judgment-creditors in like situation.

I regarded the action at special term simply as an action, calling upon the defendant, Samuel W. Tallmadge, to account as *trustee* for the property of the insolvent firms, composed of the judgment debtors, the other defendants, which, the complaint charges, was received by the defendant Samuel W. Tall-

madge, not only with full knowledge of the insolvency of the firms, and of the equitable right of the plaintiff and other partnership creditors to have the property applied to the payment of their partnership debts, but with the fraudulent intent of keeping the property from the partnership creditors.

The judgment-debtors are made defendants as the original debtors composing the insolvent firms, and as parties to the fraud. The insolvency and fraud are set up or alleged in the complaint, to raise the trust, to show that in equity, on the facts stated in the complaint, Samuel W. Tallmadge should be deemed to hold the property, or the proceeds of it, in trust, for all the partnership creditors; and that he should account for the property or its proceeds, as a trustee.

It is a principle of equity, that the partnership property of a firm shall be applied to the payment of the partnership debts to the exclusion of the creditors of the individual members of the firm. (Jackson *a.* Cornell and others, 1 *Sandf. Ch.*, 348; Wilder *a.* Keeler, 3 *Paige*, 167; Egberts *a.* Wood, *Ib.*, 517; Hutchinson *a.* Smith, 7 *Ib.*, 26; *Story's Eq.*, § 675.) Upon the insolvency of a firm the partnership property is considered, in equity, a trust fund for the payment of the partnership creditors ratably. (Egberts *a.* Wood, 3 *Paige*, before cited; *Story's Eq.*, § 1253.)

Judge Story says (*Eq. Juris.*, § 1253): "The joint creditors are, in case of insolvency (of the firm), substituted in equity to the rights of the partners, as being the ultimate *cestuis que trust* of the fund to the extent of the joint debts." In the same section he says further: "The creditors, indeed, have no lien, that is, they have a right to sue at law, and, by judgment and execution, to obtain possession of the property; and in equity they have a right to follow it as a trust into the possession of all persons who have not a superior title."

Greenwood *a.* Brodhead (8 *Barb.*, 593), approved in Crippen *a.* Hudson (3 *Kern.*, 161), was decided right because, if I understand the report of the case, the plaintiffs, as creditors at large merely, by the action sought to obtain the relief which judgment and execution creditors only are entitled to; but the last sentence which I have quoted from Story's Equity Jurisprudence, § 1253, was quoted in Greenwood *a.* Brodhead, I think, with an evident misapprehension of its full meaning and

effect. Judge Story did not mean to say that the property of an insolvent firm could not be followed in equity as a trust, in a proper action for the benefit of all the *cestuis que trust*, or partnership creditors, without such creditors having first obtained judgments and issued executions. He meant that the creditors had a right to sue at law, and by judgment and execution have the property applied to the payment of their debts; or, in equity, upon the distinct principle of a trust, that they might follow the property into the possession of all persons who had not a superior title, by a proper action in behalf of all the creditors, without any judgments or executions at law.

A purchaser or alienee, without notice of the equities of the partnership creditors, of the insolvency of the firms, and the trust, would be deemed a *bona fide* purchaser or alienee, and as such would be deemed to have a superior title. (*Story's Eq. Juris.*, §§ 675, 1253.)

It is an elementary principle of equity, that one who fraudulently obtains, or comes into the possession of money or chattels belonging to another, as to such money or chattels shall be deemed the trustee of the defrauded party, and liable in equity to account for the same as such, in all cases where there is no remedy at law, and in some cases where there is a concurrent remedy at law.

It is another elementary principle of equity, that if a trustee, in violation of his trust, transfers the trust property or fund to another, and the latter takes or receives it with notice or knowledge of such breach of trust, that he shall be deemed in equity a trustee of such property or fund, and accountable for it as such to the *cestuis que trust*.

It is another principle of equity, that in cases of implied trusts for the benefit of creditors, and of express trusts, if not otherwise expressly forbidden, if one of the creditors comes into a court of equity to enforce the execution of the trust, the court will act upon the principle that equality is equity; except in cases where such creditor has acquired a specific lien upon the fund by his superior vigilance, or where he is entitled to a legal preference. (Egberts a. Wood, 3 *Paige*, before cited.)

It is also a rule or principle of equity practice, that when several creditors or legatees are entitled to a ratable proportion

of a common fund, insufficient for the payment of all their debts or legacies, that all the creditors or legatees should be made parties to a bill filed for the distribution of the fund, or the bill should be filed by one or more of the creditors or legatees in behalf of himself or themselves, *and of all others entitled to share in such distribution.* (Egberts *a.* Wood, before cited ; Cunningham *a.* Freeborn, 11 *Wend.*, 258 ; opinion of Judge Nelson ; Hutchinson *a.* Smith, 7 *Paige*, 26 ; conclusion of the chancellor's opinion, Wilder *a.* Chapman, 4 *Edward's Ch.*, 670 ; S. C., 2 *Barb. Ch.*, 149 ; Thompson *a.* Brown, 4 *Johns. Ch.*, 619 ; Brooks *a.* Gibbons, 4 *Paige*, 374.)

For the distinction between an action or bill in equity by a judgment-creditor, or by two or more judgment-creditors, or by a judgment-creditor in behalf of himself and other judgment-creditors only, claiming a preference founded on superior diligence or on the ground of a specific lien, and an action or bill by a creditor as a *cestui que trust* for an account and distribution of a trust fund equitably among all the creditors or *cestuis que trust,* entitled to share in the fund, founded on the conceded jurisdiction of Courts of Equity over trusts and trustees ; see further, Judge Willard's opinion in Conro *a.* Port Henry Iron Co. (12 *Barb.*, 58–61), where the distinction is well stated ; see also, Edmonston *a.* Lyde (1 *Paige*, 637) ; Parmelee *a.* Egan (7 *Ib.*, 610) ; explained in Cook *a.* Smith (3 *Sandf. Ch.*, 333, 338) ; Dias *a.* Bouchaud (10 *Paige*, 457) ; Kirby *a.* Schoonmaker (3 *Barb. Ch.*, 48) ; Sandy and others *a.* Codwise and others (4 *Johns.*, 536) ; Hitchins *a.* Congreve (4 *Russel Ch.*, 562).

If a creditor has got a judgment and has issued an execution and has acquired a specific lien upon, or a right to priority of payment of his debt, out of a trust fund arising from, or created by a fraudulent transfer of his debtor's property, surely a court of equity will not force him to insist upon such lien or right to priority of payment—surely he may waive such lien or right, and ask to have the trust fund distributed ratably among all the creditors, *including simple contract creditors,* entitled to share in the fund.

A creditor's action, or bill, for relief as a *cestui que trust,* is not only founded and proceeds upon a principle or ground of equitable relief entirely different or distinct from the ordinary

judgment-creditor's action or bill; but the relief asked by it is different, it asks for a distribution of the trust fund, among all the creditors entitled to share in it; not limiting the relief to a particular judgment-creditor, or class of judgment-creditors.

If the action and proceedings in the principal case cannot be sustained on the principles of equity and cases above referred to, as an action by a *cestui que trust*, for an account and distribution of a trust fund, they cannot be sustained at all. If the plaintiff had a right to bring this action with a judgment, he had a right to bring it as a simple contract creditor without any judgment.

A slight examination of the complaint and proceedings in the action will show, I think, that the court below regarded, and rightfully regarded, the action as an action by the plaintiff not as a judgment creditor, but as a *cestui que trust*, the trust being implied from the alleged insolvency of the firms, composed of the defendants, other than the defendant, Samuel W. Tallmadge, and from the alleged fraudulent transaction by which the defendant, Samuel W. Tallmadge, came into the possession of the partnership property.

The complaint expressly states that the action is brought by the plaintiff in behalf of himself and of all other creditors of the insolvent firms, who might be entitled to share in the assets referred to in the complaint, and who might come in and contribute to the expenses of the action.

It then alleges the indebtedness of the firms to the plaintiff and to others; the insolvency of the firms; the recovery by the plaintiff of a judgment for his debt; a sale or assignment by the defendants, composing the insolvent firms, to the other defendant, Samuel W. Tallmadge, of *all* the property and assets of the firms. It also alleges that this sale or assignment was made to defraud the creditors of the firms, and that it was understood by and between the parties thereto, that the sale or assignment was made to defraud the creditors of the firms. It asks for a receiver, and for judgment that the sale or assignment be declared void as to the plaintiff and all other creditors of the insolvent firms; that the property and assets of the firms in the hands of the defendant, Samuel W. Tallmadge, or the proceeds and avails thereof, be adjudged assets in his hands,

for the benefit of the plaintiff and such other creditors as might come in and contribute to the expenses of the action. It then asks for judgment, that the plaintiff's judgment, together with his costs in this action, be paid in full out of the property and assets, or that the property be equitably distributed among the creditors of the insolvent firms who might come in and contribute to the expense of the action, or are similarly situated with the plaintiff. The first part of this alternative prayer for judgment is inconsistent with the latter part, if there was an insufficiency of the fund or assets to pay all the creditors in full; and inconsistent with the whole theory of the complaint; but that could not affect the right or propriety of making the decree which was made, distributing the fund *pro rata* among all the creditors.

I think it plain from the allegations and features of the complaint, that on the principles of equity, and authorities before referred to, the court below had a right to regard the action as brought by the plaintiff as a *cestui que trust* for a distribution of a trust fund among all the *cestuis que trust.*

That the court below did so regard it is evident from the proceedings and judgment in the action.

It does not distinctly appear from the report of Crippen *a.* Hudson (3 *Kern.*, 161), that the bill, in that case, was filed in behalf of the plaintiff and all the other creditors, but I assume that it was. The case made by the complaint was that the defendants, C. Bigelow & Wright, composing the insolvent firm, had assigned the partnership property to secure certain individual creditors in fraud of the plaintiff and other copartnership creditors. There was no allegation in the complaint that the individual creditors thus secured were not *bona fide* individual creditors. The court held that a creditor of an insolvent firm must acquire a legal or equitable lien upon the property of the firm to authorize him to invoke the equitable powers of the court in its administration; that is, to invoke the equitable powers of the court, in its administration, *on the ground of lien.* In substance, the court held that the mere insolvency of the firm did not create a lien in favor of the copartnership creditors, which enabled the plaintiff to maintain the action on the ground of lien, without a judgment and execution returned. If the copartnership creditors had no lien on the copartnership

property, on the ground of the insolvency of the firm, then *there was no fraud alleged* in the complaint in Crippen *a.* Hudson; for how could the assignment of the copartnership property to secure *bona fide* individual debts be a fraud on the copartnership creditors, unless such copartnership creditors had a preferable lien on it? Crippen *a.* Hudson, then, merely confirmed (as to the point we are considering), the doctrine of Kirby *a.* Schoonmaker (3 *Barb. Ch.*, 46), and other cases, and what, I suppose, was generally understood to be the result of the cases in this State, before Wilson *a.* Robinson (21 *N. Y.*, 587), viz., that the mere insolvency of a firm did not give the firm-creditors a lien on the firm-property, which enabled them in equity to reach it in the hands of *bona fide* individual creditors.

How far the decision in Wilson *a.* Robinson should be deemed to have changed or modified this doctrine, it is not necessary now to inquire. It is not necessary to rest the equity of the principal case on the principle of lien, nor on the fraud alleged and found, alone; but, I think, the equity of the case may be safely put on the fraud alleged and found, and on the additional ground, that the relief asked for and decreed could not have been granted by a court of law, viz., a ratable and equitable distribution of the proceeds of the partnership property, which had been fraudulently disposed of, among all the partnership creditors; this relief involving an equitable accounting, and the appointment of a receiver.

In Loomis *a.* Tift (15 *Barb. S. C.*, 541), Spear *a.* Wardell (1 *Comst.*, 44), and Hogan *a.* Walker (14 *How. U. S.*, 33), it was held that the court had jurisdiction to grant the relief asked, upon the ground of fraud. In the first case, the plaintiff was a simple contract creditor; in the second, the plaintiffs had judgment, but had issued no execution; and in the third, the plaintiff had a judgment and had issued an execution, which had been returned *nulla bona*, but the equity of the bill was not put upon that ground. In all the cases the relief sought was the payment of the individual debts of the plaintiffs only.

These were special cases, and I do not cite them to show that the plaintiff, in the principal case, could have maintained the action without showing an execution on his judgment returned, *viewing it as an action to procure the payment of his debt alone,*

but these cases show that fraud alone gives a court of equity jurisdiction in behalf of creditors; and cases cited previously show, I think, that a court of equity will not decline to entertain this jurisdiction on the technical ground that no efforts had been made at law to collect the debts by judgment and execution, when the bill is properly framed, and the relief asked is the ratable and equitable distribution of property among numerous defrauded creditors.

There is no reason why, in such a case, the defrauded creditors should be forced to bring numerous useless suits at law, when they can all prove their debts in the one suit in equity, and through the extraordinary powers of a court of equity can all obtain an equitable and common relief, which can be granted only by a court of equity.

It is said, in Chatauque County Bank *a*. White (2 *Seld.*, 252), that the provisions of 2 Rev. Stat., §§ 38, 39, apply to creditors' bills, strictly so called, and that they leave untouched the common law powers of the court of Chancery in reference to fraudulent trusts and conveyances.

The complaint in this case was not certainly artistically drawn. Perhaps it should have expressly alleged, not only the insolvency of the firms, but also the individual insolvency of the members of them; but the transaction to defraud the partnership creditors, charged in the complaint, is hardly consistent with the idea that the members of the firms were individually solvent. Besides, the defendant Tallmadge did not demur, but answered; and there being nothing in his answer, and no evidence showing that the members of the firms were individually solvent, I do not think he can urge for the first time this technical defect of the complaint on his appeal from the final judgment.

I have examined the question of jurisdiction as though the defendant Tallmadge had demurred to the complaint; but I doubt whether his general exception to the denial of his motion to dismiss the complaint, after a protracted trial on the question of fraud, authorizes him to raise the question of jurisdiction on his appeal.

The pleadings admit and the proofs show, that the property alleged to have been fraudulently sold or assigned to the defendant Samuel W. Tallmadge, was in fact all the assets and

effects of the firms of R. L. Howell & Co., and Bowers, Tallmadge & Co., and all the interest, property, and claims of said firms in or to the assets and effects of the firm of Bowers, Isaacs & Co. The pleadings and proofs also show, that the two firms first named were composed of the same individuals, viz., the defendants John J. Tallmadge, Ralph L. Howell, and Henry C. Bowers; and the proofs show that the same defendants, with one Isaacs, composed the firm of Bowers, Isaacs & Co.

Though it is probable that the sale or assignment was in substance and effect a sale or assignment of all the property, assets, and effects of all three firms, it may have been a technical or formal error for the interlocutory decree to regard it as such; but I cannot see how the defendant Samuel W. Tallmadge was, or could be, prejudiced thereby. The only person, it appears to me, that could possibly be prejudiced by thus treating the assignment, would be Isaacs. The creditors of Bowers, Isaacs & Co., could not complain, for they were permitted to come in, and did come in before the referee, and prove their debts. The defendant Samuel W. Tallmadge could not be prejudiced; for he did not set up or pretend that he had any right in or to the assets or effects of Bowers, Isaacs & Co., except by or under the alleged fraudulent sale or assignment; and it must be presumed that the property and assets of the firm of Bowers, Isaacs & Co., for which he was called upon to account, and with which he was charged by the referee, were received by him under the alleged fraudulent assignment. If he was called upon to account for only such property and assets of Bowers, Isaacs & Co., as came into his hands under the alleged fraudulent assignment, I do not see how he could have been injured by formally treating the assignment as an assignment of all the property and assets of the three firms. The creditors of Bowers, Isaacs & Co., were entitled to be first paid out of the property and assets of that firm, and they were permitted to come in, and did come in, and prove their debts. I do not see what right the defendant Samuel W. Tallmadge had to take exception to this, or to the claimed insufficiency of the proofs of Palmer's debt on the accounting.

The verbal error of both the interlocutory and final decrees, in stating the alleged fraudulent assignment to have been made by the three firms, may be disregarded; or considered as

amended, according to the fact admitted by the pleadings, and established by the proofs, upon the whole, if the finding at the special term, upon the question of fraud, was correct. I see no error or exception which should reverse the judgment; and as I see no principle or ground upon which we should reverse that finding, I think the judgment should be affirmed, with costs.

INGRAHAM, J., concurred.

CLERKE, J. (dissenting).—This is an action commenced by a judgment-creditor in behalf of himself and other creditors, for the purpose of setting aside a sale or assignment of personal property made to Samuel W. Tallmadge, as one of the firm of Bowers, Tallmadge & Co. The assignment contained a disposition of the personal property and assets belonging to the firms of R. L. Howell & Co., and of Bowers, Isaacs & Co., in which Bowers, Tallmadge & Co., had an interest.

The judgment upon which the action is founded, was recovered in this court, in favor of the plaintiffs, against the defendants J. J. Tallmadge, Ralph L. Howell, and Henry C. Bowers, Nov. 19, 1857, for $443. Execution was issued thereon Nov. 30, 1857, to the sheriff of the county of New York, where the defendant Bowers resided—the other defendants residing out of the State. This action was commenced on the 23d day of Nov., 1857, seven days before the issuing of the execution.

The question which attracts attention is, can an action of this kind, addressed to the equitable intervention of the court, to adjudge an assignment of personal property null and void, be maintained without issuing and return of an execution, before the commencement of the action.

It is quite clear, in order to maintain an ordinary creditor's bill, that an execution must be issued and returned, before the action is commenced. In Brinkerhoff *a.* Brown (4 *J. Ch.*), this was definitely settled long before the statute; so that this statute requiring that the execution shall have been returned unsatisfied in whole or in part, was only declaratory of an existing rule.

There is, however, another class of cases in which it is not declared necessary that an execution should be issued and returned. Does this action belong to that class? The cases

comprised within this class, are those where the debtor has property, on which the judgment or execution is a specific lien; but the lien, owning to the concealment or fraudulent transfer of the property, or to some other embarrassment, wrongfully created, cannot be made operative so as to satisfy the debt. (McIlwain a. Willis, 9 *Wend.*, 565.)

When the creditor seeks relief under this class of cases, he must show the court that the relief, if granted, will be effectual. Consequently, if he seeks, for instance, to remove an impediment which prevents him from satisfying his debt out of the real property, he must show that he has recovered judgment against his debtor, and this will be alone sufficient. For if the impediment is removed, his judgment is of itself a lien; and he is enabled, by means of the legal rights and remedies to which he has become entitled, to obtain satisfaction of his debt. It is not, therefore, necessary to show in such a case the return of an execution unsatisfied; the execution is his remedy after the court interposes its equitable authority to remove the impediment.*

But the judgment, of itself, gives him no lien on personal property. To the lien it is essential that an execution should be issued to the sheriff of the county where the property is situated, so that he may obtain a specific lien by the actual or constructive levy of the sheriff.

The plaintiffs, in the case before us, fails therefore in bringing himself within either class.

But it is contended that he is entitled to an exception in his favor, because he brings his action for himself and other creditors. The only authority which I have seen in our New York Reports, having any serious reference to such a proposition, is in the language of the chancellor in Hendrick a. Robinson (2 *Johns. Ch.*, 297). He says, indeed, "One creditor may undoubtedly file a bill in many cases on behalf of himself, and all the others." But there is nothing in his opinion which warrants the idea that a lien by judgment and execution must not be first obtained by the creditor who commences the action. Indeed, it is expressly decided in Parmelee a. Egan (7 *Paige*,

---

* As to whether it is not necessary to show execution *issued*, compare McCullough a. Colby, 5 *Bosw.*, 477 ; 4 *Ib.*, 603.

610), that not only the creditor who commences the action but the others in whose behalf he seeks relief, must have recovered judgment against the debtor upon which executions must have been duly issued and returned before the filing of the bill. And the principle of this case, which has never been reversed or seriously questioned, is a complete answer to the proposition that, as the property in question was partnership property, alleged to have been fraudulently assigned to the defendant, he will be regarded as a trustee for the creditors at large. M. and A. Egan, in that case, who assigned their goods to the defendant R. Egan, were copartners, and the persons who claimed to come in under the decree were creditors of the firms, and the chancellor directed that none but the complainant, who alone had issued execution on his judgment, was entitled to relief in that action. No doubt, if the other judgment-creditors had duly issued executions, and had them returned unsatisfied before the filing of the bill, they would have been entitled to the same preference, and this is the remark and argument applicable to this question in Cooke *a.* Smith (3 *Sandf. Ch.*, 333, 338).

The counsel for the plaintiff has referred us to Innes *a.* Lansing (7 *Paige,* 585), where the creditor of a limited partnership, in behalf of himself and all other creditors, obtained a decree, although he had not recovered judgment and issued execution. But as Judge Johnson, in Crippen *a.* Hudson (13 *N. Y.* (3 *Kern.*), 161), mentions, the chancellor placed his decision expressly on the ground that the provisions of the statutes, relative to limited partnerships, require that the property belonging to such a partnership is to be treated, after insolvency, as a trust-fund for the benefit of all the creditors; so that any creditor, at any time after the insolvency, was clearly entitled to file his bill on behalf of himself and all other creditors, in order that a receiver may be appointed to protect the trust fund and to distribute it among the several creditors who may come in and claim their debts under the decree.

The case before us has no resemblance in any respect whatever to Innes *a.* Lansing. The defendant's partnership was a general and ordinary one. The plaintiff has commenced this action with the view of having an alleged fraudulent disposition of property declared null and void, and he has done this

without first obtaining a specific lien on the property, a pre-requisite which always has been and still is declared essential. And when we consider the principle upon which a court of equity refuses to entertain jurisdiction for enforcing the payment of debts, there is reason why a court of equity requires that the legal remedy should be exhausted; because it is proper and expedient, and moreover, because it is a constitutional right belonging to the alleged debtor, that all claims arising from ordinary contracts of indebtedness should be fully established, according to the course and practice of the common law, before any aid should be sought for in the extraordinary and exceptional jurisdiction of courts of equity. I need scarcely add, that this applies to copartnership, as well as to individual debts.

For these reasons, the judgment of the special term should be reversed, and a new trial ordered, costs to abide event.

Judgment affirmed.