# N. Y. SUPERIOR COURT.

## FREDERICK W. FORD, agt. MARY ELLEN FORD.

An *order* for the payment of a sum of money, *as alimony*, in an action for a divorce, being an interlocutory, or *ad interim*, order, cannot be enforced by execution— that process being allowed only upon *final* judgment (except for interlocutory costs); and unless, therefore, a party can be proceeded against under the statute concerning *contempts to enforce civil remedies*, there does not seem to be any remedy for their collection, unless it can be found in the power of the court to *sequester* the property of the husband, which is doubtful.

So far as the power of the court to punish contempts is derived from the statute, such power can be exercised only in the manner prescribed in the statute, and which in a case of disobedience of an order to *pay money, is a precept and committal to prison.*

For any other disobedience to any lawful order or decree of the court; and all other cases where attachments and proceedings as for contempts have been usually adopted and practiced in courts of record to enforce civil remedies, or to protect the rights of parties, the offending party may be committed to close custody, and deprived of the liberties of the jail.

As this case is under and within the statute, it is not necessary to assert or refer to the *common law power* of a court of record to punish contempts. The statute, it has been held, has not taken away such power.

From an examination made of the statute and of the cases bearing upon the question, *held,* that in the ordinary case of the disobedience of an order to pay *ad interim* alimony the court has no power to punish, otherwise than by a committal to prison under the 4th section of the statute (2 *R. S.*, 534).

The right to go upon the *jail limits* is derived from the statute. (2 *R. S.*, 433, § 40,) and not from any mandate put into the precept of committal.

It will be sufficient, therefore, if the precept recites the order for the payment of money, and contains a command to the sheriff to commit the person to prison. It will then become a question between the prisoner and the sheriff whether the former should be allowed to go upon the limits of the jail. *(The case of Ward agt. Ward,* 6 *Abb , N. S.,* 79, *holding that the precept must be in form to entitle the prisoner to the jail limits, not concurred in.)*

*Special Term, April,* 1871.

THIS was a motion upon an order to show cause why an *attachment* should not issue against the plaintiff, for contempt in disobeying an order for the payment of temporary alimony.

In · November, 1870, an order was made requiring the plaintiff to pay a sum specified in the order, to the defendant for her support during the pendency of the action.

The action was for a divorce.

The order was served on the defendant, and payment of the sum mentioned in the order, demanded. On his neglecting to pay, the order to show cause was made.

S. HIRSCH, *for the motion.*

D. McADAM, *opposed.*

MONELL, J.—The Revised Statutes (2 *R. S.*, 534, § 1) provide that every court of record shall have power to punish, by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct by which the rights or remedies of a party in a cause depending in such court may be defeated, impaired, impeded, or prejudiced, in the following, among other cases *(subd.* 3). Parties to suits, for the non-payment of any sum of money, ordered by such court to be paid, in cases where by law execution cannot be awarded for the collection thereof; or for any other disobedience of any lawful order, decree, or process of such court.

There is a further provision, granting the same power in all other cases, where attachments and proceedings as for contempt, have been usually adopted and practiced in courts of record, to enforce civil remedies of any party to a suit, in such court, or to protect the rights of such party *(subd.* 8.)

In the several cases specified in the statute, *except* that of an order for the payment of money, proof of the misconduct must be furnished to the court (§ 3), and a reasonable time given to the accused party to make his defense. The mode of proceeding is then prescribed: either an order to to show cause, or an attachment (§ 5), the adjudication (§§ 19, 20), and the punishment (§ 20).

The "fourth" section provides that when an order of a court shall have been made for the payment of costs, *or any other sum of money*, and proof shall be made of the personal demand of such sum of money, and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison, until such sum and the costs and expenses of the proceeding be paid.

These provisions of the Revised Statutes have not been repealed, nor, as far as I can discover, impaired, or affected by any subsequent statute [except in relation to the payment of interlocutory costs *(Laws*, 1847, *p.* 491, § 2), the act to abolish imprisonment for debt *(Laws*, 1831, *ch.* 300, § 2), and the Code (§ 471), expressly excepting proceedings as for a contempt from their operations.] The act of 1847 merely exempts *parties* from imprisonment, for non-payment of *interlocutory costs*, leaving the provision concerning the payment of money, *other than costs*, untouched.

The order in this case, is for the payment of a sum of money as alimony, in an action for a divorce. This being an interlocutory or *ad interim* order, it cannot be enforced by execution, that process being allowed only upon *final* judgment; (except for interlocutory costs,) *(Code*, § 283, *Hosack* agt. *Rodgers*, 11 *Paige*, 603 , *Fassett* agt. *Talmadge*, 14 *Abb.*, 188,) and unless, therefore, a party can be proceeded against, under the statute concerning contempts to enforce civil remedies, there does not seem to be any remedy for their collection, unless it can be found, in the power of the court to sequester the property of the husband. (2 *R. S.* 148, § 60.) But even, if that statute gives the power to sequester property in cases of *ad interim* alimony, which is doubtful, it furnishes, at most, a mere cumulative remedy, and does not take away the power of the court, if such power exists under the statute concerning contempts.

In so far as the court has power in a proper case to require the payment of a sum of money, to enable a party

to carry on or resist a suit, for a divorce, it is sustained by the letter of the statute, (2 *R. S.*, 148, § 58,) which in terms gives to the court a discretionary power, to require the husband to pay a sum of money for such purpose. But it was objected by the defendant, that the order in this case, merely *requiring the payment of temporary or ad interim alimony*, was not sustained either by the letter or spirit of the statute.

If I felt at liberty to look at this as an original question, I should find some difficulty in overcoming the doubt, I entertain in regard to it, which arises from the omission to provide for it, in the 58th section of the statute; but I do not feel at liberty to do so, partly because I am qualifiedly bound to assume the power from the order itself, it not having been appealed from, but chiefly, because of the general and uniform recognition of the power in all courts having cognizance of the subject. In *North* agt. *North*, (1 *Barb. Ch. R.*, 241,) the question was directly presented, and the chancellor, held, that the court had the power independently of the statute; the power is also fully recognized in *Denton* agt. *Denton*, (1 *Johns. Ch.*, 364;) *Kirby* agt. *Kirby*, (1 *Paige*, 261;) *Graves* agt. *Graves*, (2 *Id.*, 62;) *Mix* agt. *Mix*, (1 *Johns. Ch.*, 108;) *Jones* agt. *Jones*, (2 *Barb. Ch. R.*, 146;) *Purcell* agt. *Purcell*, (3 *Edw.*, 194,) and in numberless other cases. It is also understood to be the uniform and established practice of this court, in the exercise of its discretion, to make the allowance in suitable cases. (*Betz* agt. *Betz*, 2 *Robt.*, 694; *Simmons* agt. *Simmons*, 2 *Robt.*, 712; 3 *Robt.*, 669; *Boubon* agt. *Boubon*, 3 *Robt.*, 715; *Strong* agt. *Strong*, 5 *Robt.*, 612; *Clark* agt. *Clark*, 7 *Robt.*, 284; *Hoffman* agt. *Hoffman*, 7 *Robt.*, 474.)

The chancellor in *North* agt. *North*, (*supra*,) did not refer to the 60th section of the statute, but rested the decision upon the inherent power of the court, and independently of the statute.

While the 58th section gives power to require the pay-

ment of money *to carry on the suit,* and omits giving
power to award temporary alimony, the 60th section is
more general, and provides, that when the court shall
make *an order* or a decree, requiring a husband to provide
for the maintenance of his children, or *for an allowance
to his wife,* security, &c., may be required, and the hus-
band's property be sequestered, &c.   An order is not, thech-
nically, a decree, although a decree may be an order; and
when the legislature gave power by implication, at least to
make an *order,* and also a decree, for an allowance to a
wife, it must be presumed that it had in view the common
distinction between an order and decree; and, therefore, used
the words advisedly.   And as an "order" is understood to
be an intermediate or interlocutory proceeding, it embraces
intermediate alimony, and confers the requisite power to
award its payment.

   But, without pursuing the inquiry further, and assuming
the order to be correct, in what manner and to what extent
can it be enforced ?

   As an order to *pay a sum of money,* it falls directly
within the "fourth" section of the statute, and the court
may issue a precept to commit to prison; but, as it has
been held that a person so committed, may avail himself
of the liberties of the jail and of the statute respecting
assignments by imprisoned debtors, (*Patrick* agt. *Warner,*
4 *Paige,* 397 ; *People* agt. *Bennett, Id.,* 282,) the remedy
is deemed inadequate as a punishment for the offense,
especially, if *Ward* agt. *Ward,* (6 *Abb. N. S.,* 79,) that
the precept must be in *form* to entitle the prisoner to the
jail limits, was correctly decided.   In that case it is con-
ceded that a precept may issue, under the "fourth" section
of the statute, but that it must *in terms* admit the prisoner
to the limits.   But I apprehend that the latter part of the
decision cannot be sustained, although I am aware that Mr.
Justice SUTHERLAND, discharged upon *habeas corpus,* as is
supposed, for the reason, that the precept was not in the

proper form, a defendant who had been committed for the non-payment of alimony. (*Bishop* agt. *Bishop*, *not reported.*)

The statute admitting to the liberties of the jail, in effect, merely enlarges the walls of the jail, and give a *personal* right to prisoners, in the cases specified; and in a proper case, the sheriff is bound to admit to the limits. ( *Kip* agt. *Brigham*, 7 *Johns.*, 168.) The right, therefore, to go upon the jail limits, is derived from the statute, (2 *R. S.*, 433, § 40,) and not from any mandate put into the precept.

It will be sufficient, therefore, if the precept recites the order for the payment of money, and contains a command to the sheriff to commit the person to prison. It will then become a question between the prisoner and the sheriff, whether the former should be allowed to go upon the limits of the jail.

But it is further claimed, that the remedy is not con fined to the "fourth" section, but also falls within the "fifth" section of the statute. The latter section provides, that in "all cases other than that" specified in the "fourth" section, the court may punish the misconduct or disobedience, by a fine or by imprisonment or by both. Under that section, prisoners committed to the jail, shall be actually confined and detained within the jail, (2 *R. S.*, 437, § 61,) and shall not be admitted to its liberties.

I think, however, that it must be conceded, that if the court can issue a precept under the "fourth" section, and the order is such as is therein specified, it furnishes a complete answer to the question.

The power to impose a fine or imprisonment under the fifth section, is limited to *other* cases, and cannot be invoked, if the case falls within the "fourth" section.

The same language is used in the "third" subdivision of the "first" section, which gives first, power to "*punish*" parties for mere non-payment of money, and second for any "*other*" disobedience of any lawful order. Thus, separately providing for different causes.

The proceeding under the fourth section, as has been seen, is summary, and requires no adjudication. Under the fifth section, it must be adjudged that the misconduct was calculated to, or actually did, defeat, impair, impede or prejudice the rights or remedies of the party; and upon such adjudication, the court may impose a fine, &c.

The neglects, violations of duty and misconduct, which may be punished as contempts, are many, and different from that, which relates to the non-payment of money; and they are such, as may very properly be regarded as calculated to defeat, impair, impede or prejudice the rights or remedies of a party.

But the non-payment of money, or the disobedience of an order for the payment of money, is not calculated to have such effect, and it was probably for that reason, that it was separated from other causes, and specially provided for in the fourth section. The statute has preserved the distinction between criminal contempts, such as directly affect the dignity, or impair the respect due to the authority of the court itself, and contempts which merely affect the rights or interests of parties; and has in effect divided the latter into two clases, making the disobedience of an order to pay money, a separate and distinct cause, and providing for it, a separate and distinct remedy; and by prescribing a different remedy for all *other* cases, has limited the power of the court, in cases of orders for the payment of money, to the proceeding prescribed by the fourth section of the act.

This separation of the causes of contempts, and dividing them into two classes: 1. Disobeying an order for the payment of money; and, 2, Contempts other than for the payment of money, was recognized in the late court of chancery (2 *Barb. Ch. Pr.*, 269, *st seq.*), where the first class was uniformly punished by proceeding under the fourth section.

So far, therefore, as the power of the court to punish contempts is derived from the statutes, such power can be ex-

ercised only in the manner prescribed in the statute, and which, in a case of disobedience of an order to pay money, is a precept and committal to prison. For any other disobedience to any lawful order, or decree of the court, and all *other* cases where attachments and proceedings as for contempts, have been usually adopted and practiced in courts of record, to enforce civil remedies, or to protect the rights of parties, the offending party may be committed to close custody, and is deprived of the liberties of the jail.

As this case is under and within the statute, it is perhaps not necessary to assert, or refer to, the common law power of a court of record to punish contempts. The statute, it has been held, has not taken away such power. *People* agt. *Nevins* (1 *Hill*, 154); *Dias* agt. *Merle* (2 *Paige*, 494), and the design of the *eighth* subdivision of the first section of the statute concerning contempts, was probably designed and enacted for the purpose of continuing the common law power, at least in cases not specifically named in the statute. *(Brockway* agt. *Copp*, 2 *Paige*, 578). Yet the revisors, in their notes say (5 *Edmond Ed. Stat*, 502): " In this section an examination of the general cases has been made, *as well to define as to limit a power*, which while it is absolutely necessary in many cases, is yet perhaps more liable to abuse than any other possessed by the courts." And they further say that they have included, " all cases which a diligent examination of all the writers on the subject has discovered, and which, it is supposed, ought to be included." But in a note to the article concerning *criminal* contempts, *(Ibid*, 426), the continuance of rhe common law power, in respect to such contempts, is clearly implied. They say, they have pursued their general plan, " to define and limit *undefined* powers *wherever it was possible*, as well for the information as the protection of the citizen."

The case of the *People* agt. *Nevins (supra)*, so far as it is an interpretation of the statute concerning civil contempts, is, I think, in hostility to the intention of the legislature; as

defined by the revisors; at least, it is quite doubtful if the legislature did not intend to limit the common law power to cases not enumerated in the statute.

The report of that case does not disclose the precise nature of the contempts. It was a proceeding against an attorney for not paying money directed to be paid by an order of the court. But whether it was money collected by the attorney for his client does not appear. It was there held, however, that the attorney could be committed under the common law powers of the court, and independently of the statute. COWEN, J., referring to the fourth section of the act concerning civil contempts, says, that it was enacted to avoid the circuity of an order to show cause or an attachment, and therefore gives an execution forthwith, which it calls a precept; "but that the statute no where forbids the court to proceed in the former common law mode; but merely provides that it *may commit* in a particular form short of that."

The question in that case arose upon a *certiorari* to review proceedings upon a *habeas corpus*, whereby Nevins was discharged from custody; and all that was really decided was, that the officer had no jurisdiction and could not inquire as to the sufficiency of the commitment. From the facts as far as they are disclosed, it might have been a criminal contempt. A neglect or refusal of an attorney to pay money to his client, might very properly be adjudged a " wilful disobedience of an order lawfully made," within the tenth section concerning criminal contempts. If that was the nature of the contempt, then the interpretation of the statute in that case was consistent with the intention of the legislature.

This distinction between contempts is clearly expressed in the revisors' notes above referred to. They say: " A solid and obvious distinction exists between contempts, strictly such, and those offenses which go by that name,

Ford agt. Ford.

but which are punished as contempts, only for the purpose of enforcing some civil remedy."

From the examination I have made of the statute, and of such cases as I have been able to find, bearing upon the question, I am satisfied that in the ordinary case of the disobedience of an order to pay *ad interim* alimony, the court has no power to punish otherwise than by a committal to prison, under the *fourth* section of the statute.

That a state of facts might be presented which must authorize a proceeding under the other sections of the statute, is possible ; but it is enough to say, that no such facts appear in this case.

The motion for an attachment must be denied.   But the plaintiff, upon furnishing proof of the non-payment, &c., of the alimony, will be entitled *ex parte* to a precept to commit, &c.