AARON ERICKSON et al., Respondents, *v.* MARY ANN QUINN et al., Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, NOVEMBER, 1870.)

In actions for relief on the ground of fraud, when the plaintiff sought to avoid the statute of limitations as a bar, upon the plea of non-discovery of the cause of action before a time within the limitation, equity required him to aver (by special replication to a plea of the statute, or by way of anticipation in his bill), and prove, when and how he discovered the facts constituting the fraud.

The Revised Statutes did not change the equitable rule in this respect.

Nor has the Code " in cases which were heretofore solely cognizable by the Court of Chancery" (§ 31), except to permit the plaintiff to prove the defence to a plea of the statute, without expressly pleading it in reply.

An action by a judgment creditor to set aside conveyances, upon the ground of fraud, is an action " solely cognizable by the Court of Chancery " before the Code, within section 31, although relief at law might have been had, through purchase under execution and suit in ejectment upon the title obtained.

In an action to set aside a conveyance, as fraudulent against the plaintiffs, who were judgment creditors of the grantor, the complaint alleged a. return of execution *nulla bona*, upon the judgment, more than six years prior to the conveyance, and made no allegation that the plaintiffs had been ignorant of the facts constituting the fraud, for any time after the cause of action arose.—*Held*, that it was enough if the defendants set up, in defence, the naked statutory bar, without any averment that the plaintiffs knew such facts more than six years before suit.

*Held*, further, that the burden was upon the plaintiffs to show and excuse their non-discovery of the facts, constituting the cause of action, until within the six years before the suit.

Whether the appellate court will consider a finding of law inserted by the referee in settling the case, and not in his original findings.—*Quere.*

Per TALCOTT, J., when the ruling may have been made, and probably was intimated, during the trial, it should be assumed that such was the fact, where the referee states in settling the case, that he made such ruling, and that exception was taken thereto:

Where the ruling is substantially stated in the referee's findings and conclusions of law, and the case shows an exception to the ruling as to the law, the question upon the finding fairly arises.

Where the complaint in an action for relief, upon the ground of fraud, set forth facts showing that the cause of action originated more than six years before the suit, and the answer pleaded the statute of limitations, and the

plaintiff did not prove his non-discovery of the fraud before a time within the six years, but the evidence tended to establish the contrary, and the referee's finding was against the presumption and tendency of the evidence, as to the plaintiffs' knowledge of the fraud prior to the six years. —*Held,* that the finding was unsupported by evidence, and, being of a material fact, was error in law.

THIS was an appeal from a judgment for the plaintiff entered on the report of a referee.

The complaint set forth an indebtedness of the defendant, O'Malley, prior to December 11th, 1860, to the Union bank of Rochester, upon which a judgment had been recovered and duly entered against O'Malley on the 21st March, 1861; the issuing and return of an execution thereon *nulla bona,* except as to a portion of the amount thereof, and that the balance (some $5,000) remained due and unpaid.

It also set forth the fact of O'Malley's ownership prior to December 11th, 1860, of certain real estate in Rochester of the value at that time of $12,000, and of a present value of $20,000, and the conveyance of the same to one John Quinn, the husband of the defendant, Mary A. Quinn, and son-in-law of O'Malley, the grantor, by deed dated on that day (December 11th, 1860), expressing a consideration of $6,500. It then further set forth that the conveyance had been made upon grossly inadequate consideration, and with intent to hinder, delay and defraud the creditors of the grantor in collecting their debts and especially the Union Bank of Rochester in the collection of the judgment, and that the property conveyed to said John Quinn was afterward conveyed by him through a third party, to the defendant Mary A. Quinn, his wife, without consideration and for the purpose of carrying out the same fraudulent intent and purpose, with other allegations of fraud.

It also averred title by assignment of the judgment of the Union Bank to the plaintiffs, and demanded judgment, that the conveyance be adjudged fraudulent and void as against such judgment, &c.

The defendant, Quinn, answered denying the fraud, and for a further answer averred " that the cause of action alleged

Erickson *v.* Quinn.

in the complaint did not accrue within six years before the commencement of this action."

The referee found and reported in favor of the plaintiffs upon the matters of fraud, substantially as claimed in the complaint, and declared them entitled upon the issues made in this respect, to judgment setting aside the deed from O'Malley to Quinn, and the subsequent deeds to the defendant, Quinn, and declared the judgment a lien upon the premises conveyed.

The referee also found and reported as follows: "The plaintiffs' counsel claims that the second answer of the defendants, which sets up the statute of limitations, is defective and insufficient, in that it does not allege that the plaintiff discovered the fraud more than six years before the commencement of the suit, and that although not demurred to, he may take advantage of the defect at the trial. I deem that answer, however, sufficient in form and substance to enable the defendants to avail themselves of the defence it sets up. But as the defendants have failed to show affirmatively that the plaintiffs were apprised of the facts constituting the fraud more than six years before the suit was commenced, they have failed to support their answer by the necessary proof," and he declared the plaintiffs entitled to judgment as above indicated.

The case presented a number of findings and exceptions thereto, and among others the following: "3d. That the defendant on the answer of the statute of limitations, held the affirmative of the issue, as to the time of the discovery by the plaintiffs of the facts constituting the frauds." To which holding and decision the defendant, Quinn, duly excepted, and appealed from a judgment entered.

*J. C. Cochrane,* for the appellant.

*W. F. Cogswell,* for the respondents.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—TALCOTT, J.  This is an action in equity, instituted to have a conveyance of certain premises in the city of Rochester, made by James O'Malley to his son-in-law, John Quinn, and certain subsequent conveyances, whereby the legal title to the premises was vested in the defendant, Mary Ann Quinn, the daughter of O'Malley, set aside as fraudulent as against the creditors of O'Malley.  The claim of the plaintiffs to have these deeds thus set aside, arises upon a judgment against O'Malley, an execution issued, and returned by the sheriff of Monroe county partially unsatisfied, on the 14th day of November, A. D. 1861.  The deed from O'Malley to John Quinn was executed in December, 1860, and recorded in the office of the clerk of Monroe county, on the 5th of January, 1861.  The defendant, Mary Ann Quinn, answered, and after denying the fraud, and alleging a valuable consideration for the deed from O'Malley to John Quinn, for a further answer, stated that the cause of action alleged in the complaint did not accrue within six years before the commencement of this action.

The referee has found the conveyance from O'Malley to Quinn fraudulent, and the subsequent deeds without consideration, and has ordered a judgment that all these deeds be set aside, as having been made in fraud of the rights of the plaintiffs as such judgment creditors of O'Malley.  On the question of the statute of limitations, the only evidence consists of the date of the conveyance by O'Malley, the recovery of the judgment, the return of the execution, the commencement of this suit, which was on the 5th day of April, 1869, and the testimony on the cross-examination of O'Malley, and of Jennings, one of the plaintiffs, which tended strongly to show, that at least one of the plaintiffs had such notice of the fraudulent character and purpose of the deed of O'Malley, soon after its execution, as was sufficient within the rules applied by courts of equity to such case, to be considered tantamount to a discovery of the fraud at that time.  The referee, however, held that the burden of proof, as to the discovery of the fraud more than six years before the com-

Erickson *v.* Quinn.

mencement of the suit, rested upon the defendant, and upon this sole ground decided the question raised by the defendant's answer of the statute of limitations in favor of the plaintiffs. The referee states, in his opinion accompanying his report: " The testimony goes almost far enough to lay the foundation for such an inference" (that the plaintiffs discovered the fraud soon after the conveyance by O'Malley). " But I have concluded, upon reflection, with some hesitation, that as the defendants held the affirmative of the issue, &c.,   *

  *   *   the proof is hardly sufficient to support the answer."

In this position, I think the learned referee erred. Prior to the Revised Statutes, courts of equity held, that statutes of limitation did not *ex vi termini* apply to actions in those courts, but applied the legal bar to such actions, with some reservations. And in an action founded on fraud, where, in general, concealment accompanied the fraud, they held it to be unconscientious to allow the bar to be set up until the time specified in the legal bar should have elapsed, *after the discovery* of the fraud by the complainant, or after facts reasonably sufficient to put him upon inquiry had come to his knowledge. The same doctrine was undertaken to be maintained at law, and has prevailed in some of the States of the Union; but in this State, the distinction between the rule at law and in equity was sharply defined and maintained always, subsequent to the case of *Troup* v. *Smith* (20 J. R., 33).

The Revised Statutes (2 R. S., 301, § 52) enacted that " bills for relief on the ground of fraud shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time."

It is manifest from the history of the law, as well as from the reviser's notes, that this provision was designed to adopt into the statute law the rule already prevailing in equity, as laid down in the case of *Troup* v. *Smith.* The revisers said to the legislature, in connection with their report of this section : " The rule seems to be, that a party is not affected by lapse of time, unless he discovers the fraud; and when he

Erickson *v.* Quinn.

discovers it, the limitation at law applies to bills of equity," and they refer to the case of *Troup* v. *Smith*, as explanatory of the existing rule in equity.

The Code (§ 91, subd. 6) adopts this principle, limiting its application, however, to cases "which were heretofore solely cognizable by the Court of Chancery."

This action was one which, before the Code, was solely cognizable by the Court of Chancery. It is an action to set aside deeds on the ground of fraud; a kind of relief which courts of law were inadequate to give. It is, perhaps, true that the plaintiffs might have arrived at the same practical result they are now seeking by proceeding to sell the land on execution on their judgment, bidding it in in defiance of the hostile title, and then, if there was no redemption, bringing ejectment on the title thus acquired. (*Chautauqua Co. Bank* v. *Risley*, 19 N. Y., 369.) But the remedy which a court of equity was able to afford was wholly different, and more advantageous to the plaintiffs, as it clears away the clouds upon the title before the property is exposed for sale.

The phraseology of the Code on this subject is somewhat different from that of the Revised Statutes; but there is no reason to suppose that there was any intention to change the form of pleading or the burden of proof in such cases. I think the legislative intention, manifested both in the Revised Statutes and the Code, is, to adopt the rule in equity; the only change intended by the Code being that which is plainly expressed in its language, viz., restricting the rule to cases solely of equitable cognizance. We were not referred, on the argument, to any adjudication, nor have I been able to discover any, upon the point in question, arising upon the section of the Revised Statutes referred to, or the corresponding provision of the Code. We have, then, to ascertain what was the established rule in equity on the subject. I think it incontrovertible that that rule was the opposite of what the referee has held in this case; and that the well-established doctrine was, that the plaintiff must aver and prove the time when, and the circumstances under which, he first discovered the

alleged fraud, if he sought to avoid the flat bar of the statute. Formerly, when pleadings in courts of equity were more logical and formal than they afterward became, the defendant in such case simply pleaded the statute, as at law, and it was incumbent on the complainant to avoid the defence by a special replication, alleging that he had not discovered the facts until within the limited time next before the commencement of the suit; and to this, the defendant rejoined a simple denial. (Story Eq. Pl., §§ 676, 677.)   Afterward it became customary, in the complaint, to anticipate the defence likely to be set up by the defendant, and seek to avoid it by allegations in the bill, and, when this practice was sanctioned, it became necessary for the defendant, in his plea, to negative the matter in avoidance, or to support his plea by an answer denying such matters. (Story Eq. Pl., § 754; *Foley* v. *Hill*, 3 Mylne & Craig, 475.)

It may be observed here, that exception was taken before the referee to the form of the answer, upon the ground that it should have alleged that the plaintiffs discovered the fraud more than six years before the commencement of the action. The referee held, however, that the answer was sufficient, as, when read in connection with the statute, it did virtually affirm that the plaintiffs were acquainted with the facts more than six years before the commencement of the suit.   I think, however, the answer was entirely correct, without invoking that construction of it upon which it was sustained by the referee.   The complaint sets forth the facts, from which it appears, presumptively, that the cause of action accrued more than six years before the commencement of the suit, and contains no allegation that the plaintiffs were ignorant of the facts constituting the fraud, for any length of time after the cause of action accrued, which was upon the return of *nulla bona,* as the plaintiffs might thereupon have commenced and maintained their action.   It was then, as I have endeavored to show, only necessary for the defendant to plead the naked statutory bar, leaving it for the plaintiffs to avoid it, if the facts not yet averred enabled them to do so.   Probably, under

the present system of pleading, the plaintiffs might, without reply, have proved on the trial that they had not discovered the fraud until within six years. This, however, they could not have been permitted to do, in the Court of Chancery, without having averred it. (*Bertine* v. *Varian*, 1 Edw. Ch. R., 343.) For authorities to show, that, according to the rule in equity, it is incumbent on the complainant to aver and prove his ignorance of the facts till a period within the limit of the statute. (See *Bertine* v. *Varian*, 1 Edw. Ch. R., 343; *Moore* v. *Greene et al.*, 19 How. U. S., 69; *Field* v. *Wilson*, 6 B. Mon., Ky., 479; *Carr, assignee in bankruptcy, etc.*, v. *Hilton*, 1 Curtis U. S., 390; *Stearns* v. *Paige*, 7 How. U. S., 819–829.)

The case of *Carr* v. *Hilton* is twice reported. It was a bill to set aside conveyances by a bankrupt, as made to defraud creditors. The defendant first demurred upon the ground, that, by the bankrupt law (§ 8 of Bankrupt Law of 1841), the time within which the assignee could bring the action was limited to two years, which time appeared by the bill to have elapsed before suit; and the demurrer was overruled, upon the ground that the bill alleged that the fraud was unknown to the complainant until within two years before the filing of the bill; and also alleged in detail when and how the fraud was discovered by him. (1 Curtis U. S., 230.)

The defendants answered over; and when the case came up on pleadings and proofs, Mr. Justice Curtis held the following language in regard to the question we are considering: "If it be necessary for the complainant to aver in his bill when and how he first discovered the fraud, it is certainly incumbent on him to offer some evidence in support of those averments."

Other authorities might be referred to, clearly showing the rule as to the onus of averment and proof as applied by courts of equity, from which this exception to the ordinary operation of the statute was adopted; and I think that now, as before, the plaintiff is to aver and prove, what ordinarily would be exclusively within his own knowledge, when and

how he discovered the facts constituting the fraud, except
that, as no replication is now necessary in such a case, I sup-
pose the plaintiff may prove any facts which constitute an
answer to the plea of the statute without having set them up
in any pleading.

The counsel for the plaintiffs claims that the finding, or
ruling, of the referee, contained in the case, that the defend-
ant held the affirmative of the issue as to the time of the
discovery by the plaintiffs of the fraud was inserted by the
referee in settling the case, and is not contained in his origi-
nal findings; that the referee had no authority to do this, and
that the court will not consider such finding. While con-
ceding for myself that the decisions and practice on this sub-
ject are conflicting and the law in an unsatisfactory state, I do
not think it is necessary in this case to consider the subject.
The ruling in question as to the burden of proof may very
well have taken place, and probably was intimated during
the trial, and I think we ought to assume such to have been
the fact, when the referee, in settling the case, states that he
made such a ruling, and that the defendant excepted thereto.
But substantially the same thing is stated by the referee, in
his formal report of findings and conclusions of law, as the
sole reason why he decides in favor of the plaintiffs on the
question of the statutes of limitations; and the case, which
is the only evidence before us showing what the exceptions
were, states that the defendant excepted to that ruling as to
the law. So that I think the case contains a fair statement
of the question arising on the decision of the referee.
Besides, if I am right in the views heretofore expressed, the
undisputed facts, alleged and proved by the plaintiffs, raised
the presumption that more than six years had elapsed from
the time when the cause of action accrued to the commence-
ment of the action, certainly there can be no presumption
that the plaintiffs were *not* acquainted with the facts at the
time they might have commenced their suit. To overcome
the presumption it was necessary, as I have endeavored to
show, that the plaintiffs should aver and prove the non-dis-

covery of the fraud.  They not only failed to do so, but all the evidence on the subject tended to show, if it did not establish, the contrary.  The referee, without evidence, has found against the presumption and the corroborating evidence.  It has been quite recently determined in the Court of Appeals that a finding of a material fact, wholly unsupported by the evidence, is an error in law.  Being of the opinion that the statute of limitations was upon the evidence in the case a complete bar to the plaintiffs' action, I have not considered the other questions presented.

Judgment reversed and new trial granted, costs to abide event.