WINCHELL and DUNNING, executors &c., *vs.* BOWMAN
and others.

A payment upon a joint and several promissory note, made by one of the makers, upon a direct reference of the holder to him, for that purpose, by his associates, is operative as to their rights, so as to extend the duration of their responsibility, as well as of his own.

Where H. and T., two joint makers of a promissory note, on being applied to by the holder, for the payment of the interest due thereon, requested him to call upon B., another joint maker, for the amount, and B., on being applied to by the holder, paid the interest due; *Held* that H. and T. were bound by the act of B., as much as if it had been done in their presence and upon a request made by them, personally to him; the direct request that B. should do what was obligatory upon all, rendering him the agent of the others; and that such payment was sufficient to take the case out of the statute of limitations, as to all.

The case of *Shoemaker* v. *Benedict*, (1 *Kernan*, 181,) ought not to be extended beyond what was necessarily decided therein, nor applied to a case where there has been a direct recognition of the agency of the joint contractor making the payment, by his associates.

The right of action upon a promissory note, accrues when the note is payable; and where a note was payable before the code took effect, an acknowledgment or promise, in order to take the case out of the statute of limitations, need not be in writing.

The statute of limitations does not abrogate a *debt* by the lapse of the limited time. The action, in cases of subsequent recognition, is brought upon the original contract, and the complaint counts upon that only.

APPEAL by the defendants from a judgment entered at a special term, after a trial at the circuit. The action was brought by the plaintiffs, as surviving executors of Martin Lawrence, deceased, against the defendants, Bowman, Hicks, Killmer and Tanner, as makers of a promissory note, dated April 29th, 1846, payable to the testator in one year, with interest. On the 2d of May, 1852, an indorsement was made upon the note of $56 "for interest." This money was paid by Bowman.

*J. F. Barnard,* for the appellants.

*Wm. Eno,* for the respondent.

*By the Court,* S. B. STRONG, J. This action was instituted to recover the amount of a joint and several promissory note

Winchell *v.* Bowman.

made by the defendants, in favor of the deceased, dated on the 20th day of April, 1846, and payable one year after its date. The defendants Hicks, Killmer and Tanner answer that the cause of action did not accrue within six years next before the commencement of the suit. There are indorsements on the note, of the receipt of interest in 1848, 1849, 1850 and 1852. It was proved, on the trial, that before the last payment (and inferentially after that made in 1850) applications were made to Hicks and Tanner for payment of the amount due on the note. Tanner requested the applicant to see Bowman, and urge him to pay the interest, and to insist upon his doing so. He insisted that the interest should be collected of Bowman "as long as he could keep it along." He said that by Bowman's paying the interest he (Tanner) made a good bargain, and if he had eventually to pay the principal it would not be very hard; he should not feel very bad, and should not be much the loser, as he had a good deal of business with Bowman. Hicks told the applicant that he must get the interest out of Bowman. The payment in 1852 was made by Bowman. There was no proof of any agency by Killmer after he had signed the note. The justice who presided at the trial granted a nonsuit as to Killmer, but refused it as to Tanner and Hicks, and the jury, pursuant to his direction, rendered a verdict against them for the amount due on the note. Their counsel excepted to the decision of the justice, and to his direction to the jury to find a verdict against them.

The right of action on the note in question accrued originally when it was payable, which was before the adoption of our existing statute of limitations. It existed at the time when that statute was passed, and was not then affected, so far as related to *antecedent* transactions. But the delarations of Tanner and Hicks, in effect recognizing their existing indebtedness, were made when the present law was in force; and the present right of action depends upon what was *then* said and done, and not upon what was transacted antecedently. By the code (§ 110) no acknowledgment or promise is sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the title prescribing the limitations, unless the

same is contained in some writing signed by the party to be charged thereby. It is declared, however, in a previous section (73) that the provisions of the title, including both sections, shall not extend to cases where the right of action has already accrued. The original right of action on the note in question had accrued, as I have already stated, previous to the adoption of the code. If the tendency of the subsequent acknowledgment or promise would have been (if of any avail) merely to *continue a pre-existing right*, then the new qualification was inapplicable. But if it was essential that a *new right* should have been *created* in order to maintain an action, then a written acknowledgment or new promise was probably necessary. I mean when there is nothing beyond such acknowledgment or promise. Where there has been a payment of a part of the demand, the effect previously given to it is not attained. (*Code*, § 110.) In this case there was a payment by one of the makers of the note, and the question is whether such payment by him, on a direct reference to him for that purpose, by his associates, is operative as to their rights, so as to extend the duration of their responsibility?

It was decided by the court of appeals, in the case of *Van Keuren* v. *Parmelee*, (2 *Comst.* 524,) that although a right of action obliterated by time would be renewed by a new promise or acknowledgment by one of the several contractors, as to him, yet it would not as to the others. I concurred in that decision, believing it to be in accordance with the true interpretation of the act, and that it did not overrule many (if any) previous determinations made *directly* upon the point involved in that case. But I did not concur with Judge Bronson in the propriety of extending the exemption to cases where the right of action to enforce a contract had not been barred by the statute when the new promise or the acknowledgment had been made. I considered that it had been well settled in England, for upwards of seventy years, and in this state as far back as our judicial annals extend, that a recognition of existing indebtedness on a joint contract, made before the right of action had been barred, by one of the contractors, was operative upon

Winchell v. Bowman.

all of them. In matters of such extensive application it is surely important that a long settled rule should be maintained. The conduct of all, or at any rate of all well informed men, in acquiring and continuing their rights, is influenced, and often controlled, by the decisions of our courts; especially when, as upon the question under consideration, they have been uniform. To allow them to be overthrown upon a new construction of the law, would be productive of great confusion, and often of infinite mischief. It is of far more consequence that the rule should be uniform than that it should have been originally settled upon true principles. Possibly in extreme cases, where previous decisions have been palpably wrong, courts may be bound to fall back upon first principles. I am not so wedded to precedents as to refuse to do that in such cases. But then the right should be very clear; much more so than in cases where, as in the present instance, a construction has been adopted, and until recently uniformly sustained, by the most enlightened judges in our own state, and in the country from which we have inherited most of our legal principles. It is true that there was formerly, amongst the members of the legal profession, a prejudice against the statute of limitations; and a disposition to restrict its operation may have led to some of the earlier decisions. But even then, after so long a period of affirmation it would be well to continue the rule by our courts, and leave the propriety of changing it for the future, to the legislature. As to the prejudice against the statute, that has entirely vanished, and there is some reason to apprehend that as well in this instance as in the case of the act to prevent usury, our courts are running into the opposite extreme of expanding the operation of the law.

I think it clear that the statute of limitations does not abrogate a *debt* by the lapse of the limited time. The action, in cases of subsequent recognition, is brought upon the original contract. The declaration or complaint counts upon that only. Although it should appear from the pleading that the contract became effective more than six years before the commencement of the suit, that is no cause of demurrer, nor for a dismissal of.

Winchell *v.* Bowman.

the complaint. The rule has always been, and is now, (*Code*, § 74,) that the statute cannot operate as a bar unless the objection is taken by answer. In cases of a subsequent recognition, where a defense under the statute was interposed, the plaintiff, formerly, replied that a new promise had been made. That would have been a departure, if it had not been deemed that the action was founded upon the original undertaking, and that the new promise simply gave a new date to the right of action. The uniform practice, under the statute, evinced that it was intended to apply to the remedy, and not to the basis of action.

I have in effect admitted a doubt whether, according to the better interpretation of the statute (if it had been proper to adopt it after the repeated decisions to the contrary) one of several makers of a joint note can by his admission or promise, made without the co-operation of the others before a recovery upon it is barred by lapse of time, extend the duration of the right of action against his associates. The joint contract is for the payment of the money—nothing more. No authority is given, or can be reasonably inferred, in either, to extend the liability of the others, except inferentially, by some act which from the essence of the engagement one may perform for all. The payment of the money, or of a part of it, is in direct accordance with what all primarily contract to do. If made by any one it is authorized by the others from their joint compact. It enures to the benefit of all, and it would seem that in doing that, each is not only the quasi agent, as he is sometimes called, but the full agent of his associates. The agency results from the nature of the primary engagement. In the event of a part payment the right of action is not, as it was originally, for the entire amount, but for the balance still due. As to that, the cause of action may, with propriety, be said to originate at the time of the last payment, and as that is in effect the act of all, it should bind all. I am aware that in the case of *Shoemaker* v. *Benedict*, (1 *Kernan*, 181,) the court of appeals decided that a part payment, by one, did not extend the time of the liability of his co-contractors. The profession was to some extent pre-

Winchell *v.* Bowman.

pared for this by what had been said by Judge Bronson, in *Van Keuren* v. *Parmelee*, and some subsequent decisions of this court, but nevertheless it was generally condemned. Still, it is the latest decision by our highest court, and is of course obligatory upon us, as far as it goes. I am not inclined to extend it, however, beyond what was necessarily decided in that case; and it is for the purpose of showing that it ought not to be applied to a case circumstanced like the present, that I have made any remarks upon the question which I have last considered.

In the case of *Shoemaker* v. *Benedict* there was no direct recognition of the agency of the joint contractor who made the payment, by his associates. In the present case there was. The defendants Hicks and Tanner requested the plaintiff to apply to the defendant Bowman for the payment of the interest due on their joint note. An application was made accordingly, and Bowman, in making the payment, acted in accordance with what they had requested, and they were as much bound by his act as if it had been done in their presence and upon a request made by them personally to him. It matters not that he was the principal and they were sureties. They were under a legal obligation to pay the money, and the act of their associate was a relief to them, as well as to him. The direct request that one should do what was obligatory upon all rendered the actor the agent of those by whom it was preferred. The principle *qui facit per alium facit per se* applies.

The motion for a new trial should be denied, and a judgment should be rendered for the plaintiff, upon the verdict.

[DUTCHESS GENERAL TERM; April 8, 1856. *Brown, S. B. Strong* and *Rockwell*, Justices.]