Daniels, J.
The defendant has been committed to jail for his failure and refusal to pay money to enable the plaintiff, who is his wife, to prosecute this action against him for a divorce, and for her support during its pendency. And he has now applied for his discharge by means of the writ of habeas corpus, from imprisonment under the commitment, by giving the usual bond for the liberties of the jail.
So far as the restraint imposed upon him is dependent on his refusal to pay the costs of the preliminary motions, it cannot be sustained; for as the law now stands there can be no imprisonment for the failure or refusal to pay such motion costs (Code Civ. Pro. § 15). But the fact that he cannot be lawfully imprisoned for that cause will not entitle him to be discharged without payment of the residue of the amounts ordered to be paid, provided they constitute a legal and proper cause for his imprisonment (People v. Jacobs, 5 Hun [12 N. Y. Sup’m. Ct.] 428).
As to the costs of the proceedings to punish the *186 defendant, and the amounts ordered to be paid for the temporary support of the wife, and the expenses of her action required to be defrayed, there is no such provision. Neither is there any which, in terms, or by reasonable implication, entitle him to the jail liberties on giving the usual bond to the sheriff, who has him in custody. In one respect the provision on this subject was necessarily changed to render it conformable to the abrogation of that previously existing, allowing the benefit of the limits to persons arrested for the nonpayment of interlocutory costs. Prior to that time, a person arrested for failing to pay such costs was entitled to the liberties of the jail (3 R. S. 6 ed. 719, § 61). But since the right to arrest for the non-payment of such costs has been taken away, the provision declaring who may be entitled to the liberties of the jail has been correspondingly restricted. And that is now in terms limited to those who are in custody under orders of arrest, or by virtue of executions in civil actions, or in consequence of a surrender made by the party’s bail (Code Civ. Pro. § 149). These are the only persons now declared to be entitled to the jail liberties, and each of the cases provided for is clearly distinguishable from that of a contempt for the nonpayment of money, upon which the defendant in this instance has been imprisoned.
In the People v. Bennett (4 Paige, 282), the party had simply failed to pay interlocutory costs, and for that he was entitled to the liberties of the jail under the plain language of the statute as it was at that time in force ; while in the present case he has been adjudged guilty of a contempt because of his failure to pay the moneys held to be necessary for his wife’s support during the pendency of the action, and to enable her to vindicate her right by its prosecution. As to those sums and the costs of the proceedings following this refusal to pay, the authority of the statute has *187 been quite clearly expressed. For after the amounts ordered to be paid have been demanded personally of the party, and that fact, together with his refusal to pay, have been shown by affidavit, then it has been declared that the court may issue a precept to commit the person so disobeying its order to prison, until the sum, with the costs of the proceeding, shall have been paid (3 P. 8. 6 ed. 839, § 4). This is plain language,incapable of being misunderstood, which seems to fully justify so much of the order and commitment, under which the defendant is now restrained, as provided for his close confinement, until he shall pay such costs and these two sums of money. The precept authorized is to be for the confinement of the delinquent in prison, which would not be executed by allowing him to go at large over the entire county, under a bond binding Mm not to transcend such limits. If the precept could be executed in that manner, its efficiency would be practically destroyed, and the summary remedy so clearly provided would be deprived of all the coercive power intended by the statute.
In Ford v. Ford (41 How. Pr. 169; 10 Abb. Pr. N. S. 74) this subject was carefully examined, and the same conclusion was adopted. But Leslie v. Leslie (6 Abb. Pr. N. S. 75) considered entirely different subjects. It is needless, however, to examine authorities when the statute has been enacted in language so plain. It requires that the party disobeying the order shall be committed to prison, and when restrained for that cause, no provision has been made entitling him to the liberties of the jail.
The application for his discharge must accordingly be denied, with costs.

NOTE ON DIVORCE FOR IMPOTENCE.
The following analysis of the law and the history o£ the law in reference to divorce for impotence is condensed from the ar *188 gument of George F. Langbein, Esq., in Kaiser v. Kaiser, 16 Hun, 602; and will be found to collect many useful authorities. In connection with them, consult, as to grounds, Powell v. Powell, 18 Kans. 371; Tompert v. Tompert, 13 Bush (Ky.) 326; Shafto v. Shafto, 28 N. J. Eq. 34. As to alimony and procedure, Vroom v. Marsh, 29 N. J. 15.
History of the law.] 1787.—The first statute on divorce law was passed at the tenth session of the legislature, March 30,1787. 1 Laws of N. Y. Greenl. ed. 428.
1813.—The next divorce statute was passed April 13, 1813, called “ An Act concerning divorces and for other purposes.”
By section 1, the complainant shall be entitled to the usual process to compel the defendant to appear and answer the said bill, and such proceedings may be had upon the said bill as according to law and the course and practice of the said court in other cases will entitle the complainant to have his or her bill taken pro confesso against the de-' fendant, and the same shall be taken pro confesso accordingly.
By section 2, if the defendant appeared and answered the bill, he or she may answer the same without oath or affirmation. See 2 Laws of N. Y. 1813, Van Ness & W. ed. 193.
1824.—April 10, 1824 (L. 1824, c. 105), “An Act concerning the courts of common pleas and general sessions of the peace in the counties of Essex (and other counties) and for other purposes.” By section 12 of the act, the court of chancery extended the same rights to the husband as the wife had under the former acts in divorce cases.
1828.—The statutes were revised, and the revisers, Messrs. Duer, Butler and Spencer, created the present statute. It is the same as found in the Revised Statutes of 1829, 2 B. 8. 143, § 33. I have carefully examined the revisers’ notes published in 1828 and 1830, for some cause, reason or meaning for this limitation of two years, but found none. The following is all there is as to the creation of this strange limitation:
From “ Revisers' Reports, Vol. 3. Albany. Printed by Oroswell & Van Benthuysen, 1828. Chapter VIII. Of the Domestic Relations. Title I. Of Husband, and, Wife.
“ This title embraces some of the most interesting subjects of legislation—subjects, too, which demand more than almost any other the special care of the legislature. Most of its provisions, however, will be found to be new.
“ Whilst almost every State in the Union has defined the cases in which marriage may be «contracted, and the causes which render it invalid, and has carefully provided for its due solemnization and proof, this State has never attempted to regulate, by statute, any one of these particulars. We have several statutory provisions concerning *189 divorces, but as to every other branch of the subject, we are left to the protection of the common law. This defect is the more serious because the rules of the common law are insufficient to meet all the exigencies of this important relation.
Much of the English law on the subject is derived from the canonical law as administered in the ecclesiastical courts; but it has lately been decided (JSopTc. 557) that the ecclesiastical law has never been adopted in this State, and that we have no tribunals authorized to adjudge that a marriage is illegal, except upon those grounds which would invalidate other civil contracts.
The imperfections of our laws in regard to marriage, and the necessity of legislative regulation, were pointed out by Chancellor Sanford in the case above cited, and have been often' the subject of comment.
In framing the following title, the revisers have derived much instruction and assistance from the laws of other States and nations; but, aware of the difficulties and delicacy of the subject, they have sedulously endeavored to conform the new provisions proposed by them to the sound principles recognized in the statutes now in force, and to the actual state of society and public opinion among us.
In some cases the particular motives which have led to the proposing of a new section have been explained. In general, however, the revisers have left their suggestions to • speak for themselves, because they soon found that to explain their views fully would have required a treatise, rather than a series of short notes. Their great object has been:
1. To define the requisites essential to marriage, and tha cases in which it is void, or voidable.
2. To prevent fraudulent and clandestine marriages, by prescribing the evidence by which alone marriages can be established.
3. To prescribe such directions for ministers and magistrates, by whom marriages are solemnized, as will prevent the abuses which may now occur.
• 4. To furnish the means of authenticating the marriage.
5. To define the cases in which marriages may be annulled, or dissolved.
6. To protect, in cases where it seemed just, the innocent issue of marriages, void, or voidable in law.
7. To regulate, with precision, the cases in which limited divorces may be decreed.”
Article 1 then treats of marriage, and the solemnization and proof thereof.
Section 4 is the same as section 3 of the Revised Statutes (3 R. 8. 6 ed. 148), and to it the revisers have the following note : “Some of *190 the marriages are absolutely void by the existing law. 4 Johns. Ch. 344; 1 Bl. Comm. c. 15. But it is believed that the interests of society, and of the parties concerned, will be best promoted by placing them on the ground stated in this section.” See post, art. 2.
Then there are only two short notes, of no consequence, to the next twenty-four sections.
Then follows Article II. “Of Divorces on the Ground of the Nullity of the Marriage Contract.” The whole of this article is new.
Then follows the statute, as we now find it, in the Revised Statutes (3 R. S. 6 ed. 153), except “supreme court" is substituted for “chancellor,” &c.
The sections, however, follow on from the last; and the first section of article II. is section 35, and thus the section of the statute is in this article II. of the Revisers’ Reports, section 38; and section 47 (section 33), in Banks’s 6th edition (p. 154). ,
The revisers end their work on this subject by a note that section 8 of the act (2 R. L. 187),—which was that a wife guilty of adultery shall not have dower,—“has been omitted, ^ unnecessary.” Section 13,—relating to security for costs,—was also omitted, as repugnant in principle to the established practice of the court, recognized in section 60 of their report, now section 69 (56), 3 R. S. 6 ed. 158. The revisers end as follows:
“ By section 13 of the act of April 13, 1834, entitled ‘ An Act concerning the'courts of common pleas in the counties of Essex,’ &c. (L. 1834, 349),-the same rights are extended to husbands as are given to wives by sections 11 and 13 of the act of 1813 (the sections authorizing separations for desertion and ill-treatment), but it has not been noticed in this title. It is supposed that the legislature could scarcely have understood the effect of that provision.”
I have carefully examined the legislative journals, reports, and documents, to learn if there had been any debate upon the report about these provisions, and found that there was none.
Now let us briefly examine the history of this law in view of the “ instruction and assistance ” the revisers received “ from the laws of other States and nations.”
Justinian was the first to legislate on this subject. He ordained that if the imbecility continued for two years after marriage (which period was afterwards enlarged to three years) the female should be entitled to a divorce. Code Justinian, lib. V. tit. 17; 1 Beck Med,. Jur. 117.
It was not until the twelfth century that this jurisprudence came into general use. The canon laws always desired that after the celebration of the marriage, a certain period of time should have elapsed before a complaint was entertained, in order to ascertain whether the *191 impotence was absolute or only accidental. This was adopted into the civil law of ancient France ; and many arrets of Parliament have admitted the plea, and dissolved marriages, at eight, twelve, and even fourteen years standing.
The law of England, as laid down by Blackstone and his editor, is as follows: “ A total divorce is given whenever it is proved that corporeal imbecility existed before marriage. In this case the connection is declared to have been null and void ab initio. Imbecility may, however, arise after marriage, but it will not vacate it, because there was no fraud in the original contract, and one of the ends of marriage, the procreation of children, may have been answered.” 1 Blacks. Comm. Notes by Christian, 440.
The following are a few decisions and citations under this law, although the Ecclesiastical Reports, prior to 1829 and since, contain many cases of physical incapacity, showing that the canon law in England required, and still requires, a three years’ cohabitation before the party could be declared incapable.
1820.—Briggs v. Morgan, 3 Ecc. Reps. 329; Dr. Lushington, in Anonymous, 2 Robert. Ecc. 635; 3 Curties', 27; 3 Sw. & T. 517; 4 Id. 94; 34 L. J. N. S. (Pr. M. & A.) 12-66; 35 L. J. N. S. (P. D. & M.) 105.
1823.—In Pollard c. Wyburn (1 Eagg. 725), the woman commenced proceedings twelve years after the marriage, relying, however, on proof of non-consummation after a triennial cohabitation. After the twelve years she was still virgo intacta and apta viro. The husband refused to answer the complaint. The marriage was dissolved. See, also, 3 Eng. Ecc. 308; Rogers Ecc. Law, 2 ed. 64.
1841.—In Harrison v. Harrison (3 Curties’ Ecc. 16), the court dissolved the marriage after fifteen years, no connection having ever taken place.
1845.—In 1 Robert. Ecc. 279, a divorce was decreed to the husband on his application, two years and nine months after the marriage, after great difficulty in the proof of his wife’s impotency.
In W- v. H-(2 Sw. & T. 240, 244), Sir C. Cresswell granted a divorce between a man of fifty-four and a woman of forty-nine, on the ground of her impotency, holding it did not depend on the age of the parties, but on the merits.
1886.—In Lewis (falsely called Hayward) v. Hayward, decided by the House of Lords, July, 1866 (35 L. J. N. S. [P. D. & M.], 105), Lord Chancellor Chelmsford delivered the opinion of the court. The parties lived together for fourteen years, during the whole of the time occupied the same bed. As to the long delay the lord chancellor said, at page 108: “I will advert only for a moment to the objection to the suit upon the ground of delay. It seems, at first sight, extra *192 ordinary that any length of time should operate as a bar to a proceeding for the nullity of the marriage. The usual maxim of law is ‘ quod ab initio valet in tractu temporis non convalesced But it seems that in cases of this description, delay in instituting the suit, not satisfactorily explained, is taken as a personal exception to the petitioner. There is no difficulty, however, in accounting for the delay in this case. As far as we can learn the character of the appellant, she appears to have been utterly ignorant of the knowledge which is acquired after marriage, or of tlie nature of the intercourse which usually takes place between man and wife. Suspicions and doubts have crossed her mind as to whether the respondent conducted himself towards her in the ordinary way of husbands with their wives; but it does not appear that her mind was fully enlightened upon the subject until after her separation from him. She appears to be a person of great reserve, and even with the medical man she was consulting she was reluctant to speak upon these points, or to submit her person to examination. It was not until after she had left the respondent, and was living with her mother, that she first communicated such particulars as led to an examination by Mr. Soden, and to the discovery that she was a virgin wife, when the suit was speedily instituted. The objection on the score of delay therefore entirely fails,”
The appellant was twenty-two years of age at the time of tl^e marriage, and the respondent thirty years. The House of Lords reversed the decree of the judge ordinary, and declared the marriage null and void ab initio.
1873.—In Cuno v. Cuno (6 Eng. R. Moak's Notes, 73), decided May 13, 1873, the parties were married nearly eight years before the action. At page 75, Lord Chelmsford said: “As to delay, my lords, I am clearly of opinion that, however long continued, it can be no bar to a proceeding of this description, providing the case is clearly proved on the part of the person complaining. Nor do I think, even if the proceedings have emanated from some unworthy motive, that that would be an answer, supposing the case was clearly proved. But delay will frequently have, as it ought to have, considerable influence upon the judgment which ought to be found upon the evidence adduced.”
1672.—When New York was a colony, Governor Lovelace granted four divorces, one in 1670, and three in 1672.
One of these is found in volume marked “ Court of Assize, 1665 to 1673, Yol. II.,” at page 139, and shows that, after seven and one-half years of married life, the father first made complaint of his daughter’s husband; the relations had made informal complaints “suggesting some notorious fault or impediment on the one side or *193 the other, which hitherto hath not been fully, or clearly, made to appear, so that mutual discords and differences do still continue.”
Thus it appears, after seven and one-half years, the wife had not the courage to tell what was the trouble with her husband, or, perhaps, she did not know; as it sometimes requires a physical examination to find out.
The commission that was issued is to be found at page 176, and the decree at page 200, reproduced in the notes to page 159 to 161 of Beds's Medical Jurisprudence.
These were the only cases that appeared in one hundred years down to the revolution. No provision on this subject had been made by the legislature, and none was made until the year 1838, when the omission was rectified by the enactment of the present statute, which has not been construed to the present day.
1836.—In one of the earliest cases for divorce on the ground of physical incapacity- (Devanbagh v. Devanbagh, 5 Paige Ch. 554, decided March 15, 1836), this question did not arise, and the question has not presented itself in the judicial or legal history of this State.
It is now proposed to construe the statute as applicable to the facts and circumstances in this case.
We contend that section 47 should be construed to mean, on the facts in this case, and similar cases, that the action must be brought within two years after the discovery that the physical incapacity was incurable.
Public Policy.]—Marriage is a civil institution, established for great public objects. It is defined to be a compact between a man and woman for the procreation and education of children. 6 Bac. Abr. Bouv. cd. tit. “Baron and Feme,” A.; Id. tit. “Marriage and Divorce,” A.
And it has a similar definition to this in the civil law. Cooper Justinian, 419.
Public policy demands the dissolution of a marriage wlr thus absolutely fails of its object. Decree of divorce signed vtov. Lovelace, found in a volume marked “ Court of Assize, 1665 to 1672, Vol. II.,” page 260, reproduced in Beck Med. Jur. 159-161; Taylor Elem. of Civ. Law, 351; G-v. G-, L. R. (2 P. & D) 287, 291; Ayliffe Parer, 360; Dr. Lushington, in Deane v. Aveling, 1 Robert. 279, 298; Lord Stowell, in Briggs v. Morgan, 3 Phillim. 335; 1 Eng. Ecc. 408, 409; and see 28 Eng. L. & Eg. 95; and S. C., in all its stages, 1 Spinks, 248; Fraser Domestic Relations, 53; Thorn v. Knapp, 42 N. Y. 477; 1 Bishop on Marr. & D. 5 ed. § 34.
But before the courts will grant a divorce on the ground of physical incapacity, the defect must be incurable, and the burden of proof, in the suit, is on the plaintiff to establish both that it existed at the *194 time of the marriage, and that it is incurable. Devanbagh v. Devanbagh, 5 Paige, 554; 554; Newell v. Newell, 9 Id. 25; Ferris v. Ferris, 8 Conn. 166; Brown v. Brown, 1 Hagg. Ec. 523; 35 Ala. 226, 229; 5 Frost (N. H.) 267; G- v. G-, 33 Md. 401; 2 Aik. 188; G-v. G-, L. R., 2 P. & D. 287, 289, 291; Dr. Lushingtout, in 1 Robert. 298.
In cases where the wife is the applicant for divorce, and the impotency of the husband proceeds from self-abuse, which may be cured by his exercising moral restraint over himself, yet not otherwise, and he will not exercise such restraint, this act of curability, it would seem, is not deemed to take away her right to the divorce. S- v. E-, 3 Sw. & T. 240; F-v. D-, 4 Id. 86.
And says Bishop (vol. 1, end of section 332): “That these views of the English courts are sound, it appears to the writer no argument is required to show.”
What is the true .policy of the law applicable to this case, and what is the true policy of the meaning and construction of this statute ?
To hold that the action must be brought within two years after the solemnization of the marriage presumes that the physical incapacity will be discovered on the first night of the marriage, or immediately thereafter, or sometime thereafter within two years. Such a construction in nine cases out of ten renders it impossible to commence an action.
The Code.]—The act and preambl3 to the Code of Procedure from 1848 to May 1, 1877, was as follows:
“An Act to simplify and abridge the practice, pleadings, and proceedings of the courts of this State. Whereas it is expedient that the present forms of actions and pleadings in cases at common law Should be abolished, that the distinction between legal and equitable remedies should no longer continue, and that an uniform course of proceedings, in all cases, should be established; therefore the People of the State of New York represented in Senate and Assembly do enact as follows.” By section 66 the legislature repealed the provisions of the Eevised Statutes entitled “ Of actions and the time of commencing them,” and enacted title II., chapters I. to V., sections 66 to 90 of the •Code of Procedure as to the time of commencing civil actions.
In consequence of amendments down to the time of the commencement of this action, the sections became 73 to 111 of the Code of Procedure.-
Section 69 abolished the distinction between actions at law and suits in equity, together with the forms, and declares that there shall be but one form of action, which shall be denominated a civil action.
Section 74 (being section 67 of 1848), as amended by chapter 438 *195 of the Laws of 1849, declares that such civil actions could only be commenced within the periods prescribed by this title after the cause of action shall have accrued, except where in special cases a different limitation is prescribed by statute, and in the cases mentioned in section 73.
The cases in section 73 were those already commenced, or where the right of action had already accrued in 1849. By Laws of 1851 (c. 479), this section 74 was amended by adding: “But the objection that the action was not commenced within the time limited can only be taken by answer.” The heading of this act is “Time for Commencing Civil Actions,” and this section has remained as amended till the present day, the New Code of Civil Procedure having adopted the same in section 413.
Section 127 treats of the “Manner of commencing Civil Actions.”
By section 135, sub. 5, an action for divorce is commenced by summons and complaint in the same manner as other actions. See note of editor to 3 R. S. G ed. 155.
Section 140 abolishes all forms of pleading theretofore existing, and states that the forms of pleading in civil actions are there prescribed by the act.
Thus Part I. of the Code treats “Of the Courts of Justice and their Jurisdiction.”
Part II. “Of Civil Actions.”
Title I. “Of the Form of Civil Actions,” which includes section 69.
Title II. “ Of the time of Commencing Civil Actions.” Chapter I. “Of the Time of Commencing Actions in General,” which includes and concludes with section 74.
Chapter II. “ The Time of Commencing Actions for the Recovery of Real Property.”
Chapter III. “In Other Actionsand section 93, included in this chapter, treats of actions to be commenced within two years, and action for divorce or to annul the marriage contract are not mentioned.
Chapter IV. contains general provisions as to the time of commencing actions, and sections 108 and 109 excepts actions against moneyed corporations, directors and stockholders, from operation of this title, and leaves the time to sue them for certain purposes to other statutes.
Section 74 of the Code now reads as follows : “ Civil actions can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, except where in special cases a different limitation is prescribed by statute, and in the cases mentioned in section 73.”
But the objection that the action was not commenced within the time limited can only be taken by answer.
*196 Nothing is stated in these titles as to the time of commencing actions for annulling the marriage contract or for divorce, for the reason that, like many other cases, these are within the exception of section 74, being special cases, and the time for commencing them being prescribed by statute. The revised statute contains the limitation for this action, the same as the code statute contains the limitation for other actions.
By section 74 civil actions can only be commenced within the periods prescribed in this title after the cause of action accrued ; this action is a civil action, the period for commencing it is not prescribed in this title, it is not mentioned, the time is fixed by the Revised Statutes ; the cause of action accrued after the solemnization of the marriage—a different limitation is not prescribed by the code statute because the action is not mentioned in it.
The statute may prescribe a different limitation from the Code, or the statute may solely prescribe the limitation, but there is only one course of pleading, practice and procedure under the Code in all actions, no matter of what name, nature or kind.
There is but one form of action, and that is a civil action, and as section 74 speaks of a civil action, and this is a civil action, it follows that section 74 relates to and includes this action, and when it says, “ But the objection that the action was not commenced within the time limited can only be taken by answer,” “the action ” means a civil action; the section commences with the words “ Civil Actions,” and therefore includes this action.
The objection in this civil action, that it was not commenced within the time limited in order to be uniform with the practice and proceeding in all other actions, must be taken by answer, and not having been taken by answer, the report should have been confirmed.
' Section 74 statute was created by the same power as section 47 of the Revised Statutes. It was made subsequent to section 47 of the Revised Statutes, and with the knowledge of the existence of the latter. The section 74 statute therefore governs and rules the section 47 statute.
Section 74, after saying actions must be commenced within the time prescribed in that title, and after excepting special cases where a different limitation is prescribed therefor by statute, declares, by the amendment of 1851, that in both the actions, the first, in which the time is limited by the title in the Code, and in the second in special cases, where the time is limited by statute, the objection that the action was not commenced within the time limited, can only be taken by answer.
Here again the legislature made no distinction between the cases *197 embraced by the title in the Code and the special cases where a different limitation is prescribed by statute. The legislature, had they so intended, would have said: “But the objection that any action prescribed in this title was not commenced within the time limited can only be taken by answer,” or “But the objection that the action was not commenced within the time limited in this title can only be taken by answer.”
The Code and other statutes declare that actions “ can only be commenced within the periods prescribed,” and the “periods ” “shall be as follows ”:
Thus, by saying it is of the right and essence of the action that it be commenced within two years, the same may be said of other actions to be commenced within certain times, and the latter part of section 74, that the objection can only be taken by answer, would be of no avail whatever.
The fact that no distinction, difference or exception was made as to any action, although actions prescribed in the title and special actions, under, statutes, are specified, and, as we have seen, this includes all kinds of actions, shows conclusively that by the law, as made by the people, the objection in this special case, that it was not commenced within the time limited by the Statute, can only be taken by answer.
The practice of the courts before the amendment of the statute (section 74 of the Code) was, that if it appeared from the face of the complaint that the action was not brought within the time required by statute, it was a ground of ■ demurrer, as there was no present cause of action. 1 How. Pr. 18; 2 Paige, 280; 2 Barb. 488; 4 Id. 364.
And the present practice is, where the complaint shows a cause of action, barred by the statute, it is imperative that the objection must be taken by answer, to make it in any wise available. Bihin v. Bihin, 17 Abb. Pr. 20; Baldwin v. Martin, 14 Abb. Pr. N. S. 9; Williams v. Willis, 15 Id. 11; Lefferts v. Hollister, 10 How. Pr. 383; Sands v. St. John, 23 Id. 140; 36 Barb. 628; affirmed, 29 How. Pr. 574, n.; Swift v. Drake, MS. Gen. Term, 6th Dist.; Waltermere v. Westover, 14 N. Y. 21; Butler a. Mason, 5 Abb. Pr. 40, and 16 How. Pr. 546; Winchell a. Bowman, 21 Barb. 448; 18 N. Y. 558; cases cited to section ,74, in Wait Code, 97, 98; Voorhies a. Voorhies, 24 Barb. 150; Atherton v. Dalley, 20 How. Pr. 311; Stewart v. Smith, 14 Abb. Pr. 75; Fagal v. Perro, 17 Id. 121; Van Vleek v. Burroghs, 6 Barb. 344; Bidwell v. Astor M. G. Co., 16 N. Y. 263; Clinton v. Eddy, 54 Barb. 54; Cotton v. Maurer, 5 Sup'm. [T. & C.) 575; Selover a. Coe, 63 N. Y. 438; People v. Williamsburgh T. & B. Co., 47 Id. 586; Leonard v. Foster, 7 Hun, 464.
Judge Roosevelt, in Lefferts v. Hollister (10 How. Pr. 383), held *198 that whether an action was barred by the statute of limitations depended upon circumstances, and among them, the time when the suit was commenced, a fact not stated, nor required to be stated, in the complaint; under the old practice, it was the Code, which, although not applicable to previously existing causes of action, so far as the substantial right is concerned, does regulate the forms by which parties are to avail themselves of their rights (sections 73 and 74), and it is made imperative, that a defense setting up the statute of limitations shall only be taken by answer.
Judge Balcolm, writing the opinion of the court, in Sands v. St. John (23 How. Pr. 144), says: “ I have no doubt that, by the Code, the objection that the action, whether it be equitable or legal, was not commenced within the time limited, can only be taken by answer, for such is the plain and obvious import of section 74.” See S. C., 36 Bari). 628.
Judge Monell, in Baldwin v. Martin (14 Abb. Pr. N. S. 12), said that since, as well as before the Code, and under both systems, the statute bar must be specially pleaded, in the one case the rules of pleading requiring it, and in the other the rule is made a part of the statute law.
In Winchell v. Bowman (21 Barb. 451, Gen. Term, 1856), S. B. Strong, J., said: “The rule has always been, and is now, that the statute cannot operate as a bar, unless the objection is taken by answer.”
If the defendant had appeared, and omitted to plead the statute of limitations, the court, in furtherance of justice, would not permit the defendant to make the objection thereafter. Clinton v. Eddy, 37 How. Pr. 23.
Slight evidence of waiver of the statute of limitations is sufficient. Ripley v. Astor, 17 How. Pr. 44; 29 Barb. 552.
And even where defendant did plead the statute in their answer, but at the same time acknowledged the debt, it was held that defeated the operation of the statute. Taylor a. Austin, 3 Wend. 496: Wood v. Nichols, 2 Id. 501; Murray v. Coster, 20 Johns, 575. See also Clinton v. Eddy, 37 How. Pr. 23; S. C., 54 Barb. 54; Bucklin v. Chapin, 1 Lans. 443.
Surrogates’ courts apply the same principle and practice. Re de la Croix, 1 Bradf. Surr, 1; Van Vleck v. Burroghs, 6 Barb. 341.
Thus we see how strenuously the courts rule against any attempt to deprive a litigant of just rights because he has not sued in time, no matter how plain and clear the legislative prohibition may be as to the limitation of the time.
The courts hold to a uniform system of pleading, practice and procedure. Judge Monell, in Baldwin v. Martin, 14 Abb. Pr. N. S. *199 71, 13, said: “I think the legislature, in uniting the equity and common law systems, intended to make applicable the same rules, whether the action was of an equitable or legal nature, and thus make a uniform system. Hence, the rule, which at law required the statute of limitations to be especially pleaded, was enacted in the Code, and made applicable equally and alike to both kinds of relief, and requiring the statute bar to be especially set up as a defense.”
It nowhere appears that the legislature designed to distinguish the pleadings, practice and proceedings in action for divorce, or in an action to annul a marriage contract, from any other action, on that it was intended to except such actions from rules of pleading, practice, and proceeding applicable to all other actions.
Hence, matter to show a suspension of the time which otherwise would raise a bar, need not be averred in the complaint; but, as in other actions, must be specially pleaded, and then leaves the burden of proof precisely where they are left in all other cases. Sand v. St. John, 36 Barb. 623; S. C., 23 How. Pr. 140; Clinton v. Eddy, 54 Barb. 54; S. C., 37 How. Pr. 23.
The Code declares that civil actions can only be commenced within the prescribed periods, but the time of the discovery need not be stated, and the statute bar, if it exists, must be set up by answer. If the statute is not set up as a defense, the action will prevail. Baldwin v. Martin, 14 Abb. Pr. N. S. 15.
The objection, or defense, that the action was not commenced in time, cannot be anticipated in the complaint, and if facts are alleged to head it off, they are surplusage, and may be stricken out on motion as redundant and irrelevant. Butler v. Mason, 16 How. Pr. 546; Sand v. St. John, 23 Id. 144, 145.
If this objection is set up in the answer as a defense, any matter in avoidance of it may be proved without being alleged in the complaint, or in a reply. Esselstyn v. Weeks, 2 Kern. 635; Waltermire v. West-over, 4 Id. 20, 21; Sand v. St. John, 23 How. Pr. 143; S. C., 36 Barb. 628; Erickson v. Quinn, 3 Lans. 305, 306.
Thus, if defendant, in the case at bar, had been absent for two years from the date of solemnization of the marriage, it would appear, from the dates on the face of the complaint, that the right of action was outlawed, yet according to the rules of pleading we could not explain this in the complaint; if we did, the defendant might appear for the purpose of a motion to strike it out as redundant and irrelevant, with costs. If he had appeared and pleaded the statute, proof could have been given in avoidance. As he did not appear, and no such objection was made, no evidence in avoidance was given before the referee.
Suppose defendant was absent from the State part of the t-wo *200 years ? The plaintiff could not anticipate such an objection from the judge.
The code statute has changed and modified the Revised Statutes, as has already been partly shown.
Section 48 of the Revised Statutes (p. 155), has been altered by section 69 of the Code of Procedure, in so far that the distinction between actions at law and suits in equity were abolished, and but one form of action, a civil action, is substituted iu ail cases.
Thus we see that, prior to the .Code, suits to annul a marriage, although obliged to be brought by bill, were in all other respects conducted in the same manner as other suits prosecuted in courts of equity, and the court had the same power as in other cases.
§ 59 [52], “ All issues upon the legality of a' marriage (except where the marriage is sought to be annulled on the ground of the physical incapacity of one of the parties) shall be tried by a jury of the country; and the chancellor shall award a feigned issue for the trial thereof.” 8 if. 8. 6 ed. 191, § 59.
This section is found under “ Of the General Powers, Duties and Jurisdiction of the Court ” of Chancery.
In Devanbagh v. Devanbagh (5 Paige, 554), the chancellor notices the provisions of the Revised Statutes (2 R. S. 444, § 35), which enacts that all such proceedings shall be conducted in the same manner' as other actions in equity.
The rule which existed under the Revised Statutes—that in a bill for fraud which was committed more than six years before the commencement of the suit, the complainant must allege and prove that the fraud had not been discovered until six years before suit—was so far changed by the Code of Procedure (§ 91, subd. 6), that the defense of the statute of limitations must now, in all cases, be set up by answer, even where, on the face of the complaint, it appears that the fraud was committed more than six years before suit. Baldwin v. Martin, 14 Abb. Pr. 9; See also Foot v. Farrington, 41 N. Y. 164.
" Section 100 of the Code changed the Revised Statutes (2 R. S. 297, § 27), as to absence of defendant. In the Revised Statutes this provision was restricted to cases of actions for debts or demands not on specialty, or damages only. The Code makes no restriction.
The Revised Statutes (2 R. S. 206, § 23), as to balance of accounts, was modified by section 95 of the Code of Procedure. Iu the Revised Statutes the provision was confined to actions of debt and account, or assumpsit, and the words at the end of the section, “ on either side,” were added in the Code. Many other instances could be cited.
The practice of the court is to have such an objection as suit not commenced in time, pleaded. There is no reason why the rule should *201 not be applied to this case.' There is every reason for it. Justice, equity and public policy demand it.
1. In a matter like this, the usage of the courts determines the law of the courts.
There is also room for the suggestion that when the legislature commits to a tribunal jurisdiction over a particular cause of divorce, it cannot be presumed to intend that the tribunal shall administer the remedy in forms of procedure altogether alien to its usual ones. The judge who, for the time being, presides over a tribunal, is bound by the course of procedure already established by precedent. Bishop on Marr-. &. D. 5 ed., §§ 77, 78, 79.
2. Suits to annul a marriage are commenced and conducted in the same manner as other equitable actions, and the court has the same power to award issues, to decree costs, and to enforce its decrees, as in other cases. 2 R. S. 144 (149), § 35; B- v. B-, 8 Abb. Pr. 44; S. C., 28 Barb. 299; Griffin v. Griffin, 47 N. Y. 134, 136.
The action for an absolute divorce is commenced by the summons, or summons and complaint, in the .same manner as in other equity cases. 5 Wait Pr. 695, and see Code, § 185, subd. 5.
By rule 81 (formerly rule 90) it is provided that the defendant may set up “ any other matter which would be a bar to a divorce, separation, or the annulling of the marriage contract.” See also 5 Wait Pr. 722.
In Article III., “ Of divorces dissolving the marriage contract," by section 55 and subdivision 3, the court may deny a divorce when the suit shall not have been brought within five years after the discovery by the complainant of the offense charged.
The court has made a rule (rule 87, now rule 78), that unless it be averred in the complaint that five years have not elapsed-since the discovery of the fact that such adultery had been committed, the plaintiff’s affidavit must be produced as to the fact.
No rule whatsoever is made about the allegation, or proof of two years, in divorces for physical incapacity.
3. The right to an action for divorce on the ground of adultery, where the suit is not brought within five years after the discovery by the complainant of the offense charged, has received judicial construction in the case of Valleau v. Valleau (6 Paige, 207), where it was held the evidence was that the right was barred, where. the adultery continued for five years, down to the time of the commencement of the action, and where it was open and notorious, the plaintiff must satisfy the court that by reason of his absence from the country, or otherwise, he was not aware of the fact of the continued adultery until within five years from the commencement of the suit.
4. In Waterman v. Waterman, 37 How. Pr. 40, the court said; *202 “ It is true that the authority of this court to grant divorces is derived from the statute. The title in the Revised Statutes which confers the authority very plainly contemplates that such authority shall be exercised by the ordinary proceedings in a chancery suit, except when it makes specific provisions to the contrary.” 2 It. 8. 1 ed. 143, 149.
No specific provisions of the statute to the contrary exist.
This case also decides that the Code modifies the statute.
5. In the case of Montgomery v. Montgomery (3 Barb. Ch. 136), the chancellor applied to the regular statute of limitations, relative to the time of commencing suits in equity on the ground of fraud, six years, to an action for divorce to annul the marriage contract on the ground of fraud. Now, this was done, although the divorce statute expressly declares it can be brought “ during the lifetime of the parties, or one of them.” The bill was filed April, 1846, long before the enactment of the Code and section 74.
6. Abbott, in his Digest (ed. 1860), vol. 3, 518, says, at section 43: “ Time within which suits to annul marriages may be brought. 3 R. 8. 143-144.”
Thus looking upon the statute as a statute of limitations as to divorces, as to the times in them mentioned, within which the suit the respective civil actions are to be brought.
These are to be found in Banks’s 6th edition of the Revised Statutes, pp. 153 to 155, and includes section 47 (33) in question.
7. In the case of Williamson v. Williamson (1 Johns. Ch. 488), it was held “that the lapse of time was a bar to the suit, by analogy to the limitations of actions. The statute empowers the court to grant a divorce, but leaves it in their discretion.”
Thus we see that the regular statute of limitations was applied and likened to a divorce suit, and it will be seen that the statute is not imperative on the court to deny a divorce on the ground of adultery, because not brought within five years after the discovery. Section 55 (43), (3 R. S. 6 ed. 156), reads: “Although the fact of adultery be established, the court may deny a divorce in the following cases.”
8. In Bihin v. Bihin (17 Abb. Pr. 20, General Term, October, 1863), Sciíügham, J., it was decided, that in actions for limited divorce, this section is equally applicable, and the objection that the action was not commenced within the time limited can only be taken by answer.
9. The husband did not avail bimself of this defense, and thus left his wife without any opportunity to show anything in reply to any defense, and thus the court is left to do equity to the plaintiff, there being no connivance, procurement or fraud on her part, and she *203 coming into court an innocent maiden with clean hands to ask the court for aid out of her misfortune.
10. The court should strain itself to construe this statute to give this plaintiff relief. The statute raised as a bar to the plaintiff by the justice at special term was made nearly fifty years ago, by the legislature adopting a Report of the Revisers of the Statutes, who said that this two years’ limitation conformed to the then “actual state of society and public opinion among us.” The same power, the legislature, has since, in more advanced and enlightened times, while this statute was on the books, enacted and passed a statute, “But the objection that this action was not commenced within the time limited can only be taken by answer.”
The time limited was two years. The action was not commenced within the time limited, but the objection that it was not so commenced was not taken by answer, and the legislature, with this two years’ divorce statute upon the books and in force, did not except it from the humane and sweeping law they passed in 1851. As was said before, if any exception as to this statute, or any other, was intended, the legislature would have said so, or somehow showed its contrary intention. The legislature gave the unfortunate innocent, party, who was so fortunate as not to have the statutory objection raised against her by answer, an opportunity to escape.
The statute of 1851 is as much a statute as the one of 1829. Both are statutes made by the people. The statute of 1851 was made twenty-two years later ; it has not been changed by any exceptions to ltd sweeping language since ; it is therefore entitled to controlling weight in the determination of the question on appeal.
Fraud.}—Another suggestion that may aid the plaintiff to obtain relief is that the marriage may be set aside upon the ground of fraud.
The marriage contract between plaintiff and defendant is void on the same ground that other contracts may be avoided.
The court of chancery, and since then the supreme court, has, in some cases, entertained and granted bills to declare the nullity of marriages, independent of any statute conferring jurisdiction. These were actions on the contract, upon the ground of lunacy or fraud, and it was held that the marriage contract was not excepted from the operation of general jurisdiction.
The contract of marriage implies that the parties were capable of consummating it; and when an impotent person, knowing his defect, induces a person, not cognizant of it, to marry him, he commits thereby a gross fraud and a grievous injury ; and even if himself ignorant of it, there is equally a violation of the contract and equally an injury. In either case the marriage would be void, in- the one on the ground of fraud, and in the other for violation of the implied *204 warranty. Briggs v. Morgan, 3 Phillim. 325; 1 Eng. Ecc. 408, 410; Rutherford Inst. b. 1, c. 15, § 9; Roger Ecc. Law, 2 ed. 640; Benton v. Benton, 1 Day, 111; Guilford v. Oxford, 9 Conn. 321, 327.
In Scott ». Shufeldt (5 Paige, 42), where the parties were white persons, and the complainant was charged by the oath of the defendant as the putative father of her bastard child, and the complainant thereupon, believing the child to be his, married her to obtain his discharge from the proceedings against him under the bastardy act, and he subsequently ascertained that the child was a mulatto, and that the defendant knew that fact at the time she swore it to be his, she then having been delivered, and seen the child, it was held that the complainant was entitled to a decree declaring the marriage contract void, on the ground that his consent was obtained by fraud.
Impotency in one of the parties is laid down as rendering the marriage void, as being a species of fraud on the other party ; but is only a ground for annulling the contract by a court, or for a divorce. Bouvier Law Diet. “Marriage.”
Certainly the marriage of defendant with the plaintiff was a deception and a fraud upon her. The law presumed, and she had a right to presume, that lie was a perfect man.
The fact that he offered himself to the plaintiff for marriage amounted to a representation, which the plaintiff had the right to believe that he was in a marriageable condition and free from any disease which would hinder him from entering into that relation. Nevertheless he concealed his disease or incapacity from the plaintiff, and thus induced her to marry him, and but for this deception and fraud the plaintiff would not have married him.
■ ' The complaint and evidence shows that the incapacity was known to the defendant and unknown to the plaintiff at the time of the marriage. The plaintiff was therefore deceived into tiie marriage.
There is no failure of proof as to deception and fraud. The case might be stronger by proof of the courtship and representations, if any, and how they came to marry, so far as any declarations were used, but the whole evidence shows sufficiently that the defendant deceived and defrauded the plaintiff into this marriage. It appears by the evidence that she did not know that there was anything the matter with him when she married him, and the defendant knew it, for he was physically incapable the first night, and ever since so remained. It was a fraudulent concealment on his part at the time, and afterwards.
If the complaint in this action were changed to one of fraud, the evidence and proof would make out a case of deception and fraud as in Meyer v. Meyer (49 Row. Pr. 311).
Paragraph IV". of the complaint contains an allegation of deception *205 and fraud, but it would be much strengthened if this paragraph were amended by adding to the end thereof the words “ and was fraudulently concealed from her.”
This makes an additional cause of dissolution of the marriage. 1 Abbott Forms, 628.
The plaintiff now makes this motion to amend, and it can be granted at general term.
In Douglass v. Douglass (5 Hun, 146) (a divorce case), this court allowed defendant to correct his practice by changing the notice of appeal to a motion for a new trial.
The amendment is a mere matter of form, and not of substance. The evidence, proof and facts already found sustain this allegation, and it is merely to conform the pleading to the proofs. The defendant would not, and could not have anything different to answer, as to one form of complaint or name of the action, than the other.
The plaintiff also moves to conform the pleading to the proofs and facts found, and for judgment according to the facts of her case, without regard to the name or form of her action.
These motions do not substantially change the claim, and they are certainly in favor of justice, not only to this plaintiff, but to the public, for the plaintiff is a virgin, twenty-six years of age, and her freedom from the defendant is conducive to the public welfare, as she could marry again, and bring forth children, which she can never lawfully do while tied to the defendant by this mockery of a marriage.
Equitable powers of the court.~\—This court is vested by implication with those equitable and incidental powers necessary to grant the plaintiff equitable relief, by giving her the construction contended for in the foregoing points, or one of them, which will enable her thus to obtain the dissolution of this marriage.
■ The court of chancery had, and the supreme court has, general powers to adjust remedies, and annex conditions to the exercise of rights, and the redress of injuries. Story Eq. Jur. §§ 27, 28.
A greater injury than the one under which the plaintiff labors and suffers, cannot be known or mentioned.
In Griffin ©. Griffin, 47 N. T. 135, the court sustained the power to award a defendant wife extra expenses and counsel fees, beyond the taxable costs, $1,200 counsel fees, and $929.50 expenses to defendant, and $250 counsel fee to plaintiff, and this was sustained by the court of appeals.
The court said, p. 136, that “It is conceded that there is no statute in terms authorizing the order, and that, if sustained, it must rest upon the incidental powers formerly vested in the court of chan *206 eery, in cases of this description, and to which the supreme court has succeeded.”
In this case it was discovered that the statute not only omitted to provide for furnishing the wife with the means of defense in any case of divorce, and for indemnity for counsel fees and expenses of a successful defense, but even for temporary alimony during the pendency of the suit. Pp. 137, 140. Said the court:
“ Yet it has been the constant practice of the court of chancery, both before and since the Revised Statutes, to make equitable provision for all these matters; and in doing so it has been guided by the decisions of the ecclesiastical court of England in similar cases.” P. 137.
This was upon the ground of the general equitable jurisdiction of the court, and also that when our statutes did confer jurisdiction upon the court of chancery in these actions for divorce which by the English law are solely cognizable in the ecclesiastical courts, the grant of the jurisdiction carried with it by implication the incidental powers which were indispensable to its proper exercise, and not in conflict with our own statutory regulations on the same subject. Perry v. Perry, 2 Paige, 504, 506; Devanbagh v. Devanbagh, 5 Id. 556; Griffin v. Griffin, 47 N. Y. 137.
“ In this State the power of the court is not alone confined to the statute, as in the States of Vermont, Rhode Island, Massachusetts and North Carolina. Jurisdiction in cases of divorce was conferred here, not as a special and limited jurisdiction granted to a common law court, but it was granted to a chancery court, and the court in administering it has always called to its aid its own equiry powers and the decisions of the ecclesiastical courts of England in like cases.”
The allowance of ad, interim, alimony does not depend wholly upon the statute, but upon the practice of the court as it existed before the statute (referring to reviser’s note to the statutes). North v. North, 1 Barb. Ch. 241.
The supreme court, both before and since the Revised Statutes, makes equitable provisions, and in so doing has been guided by the decisions of the ecclesiastical courts of England in similar cases. Mix v. Mix, 1 Johns. Ch. 110; Denton v. Denton, Id. 364; Lewis v. Lewis, 3 Id. 519; Wood v. Wood, 2 Paige, 114; North v. North, 1 B. Ch. 244.
Impotence being considered as incurable, curable, accidental, or temporary, the plaintiff might have supposed, even if she realized and comprehended her husband’s condition, that he was curable, and that she waited two years, to make sure, is to her credit, and should not in all reason or equity be taken against her.
Two years are a very short limit. It must be shown that the dis *207 ease is incurable; the parties might wait two years from the solemnization of the marriage to cure it, and failing to cure it, thus endeavor to prove that it was incurable; but the two years having thus passed, and finding it was incurable, the party would be without remedy.
This is a condemnation of meekness and patience.
The late Chancellor Walworth, in his opinion in the case of Devanbagh v. Devanbagh (6 Paige, 177), says: “I also infer from what is stated, that there have been regular catamenial discharges, and the defendant appears to have had no suspicion that she was not like other women until some time after the marriage.”
Equity will always excuse delay when properly explained. See cases cited ante, and Laird v. Smith, 44 N. Y, 618; Peters v. Delaplaine, 49 Id. 867.
The supreme court, being a court of equity,, and this being an equity, action, cannot the court somehow do equity to the plaintiff, and grant her this divorce, when she did not comprehend and discover her husband’s condition until six months before the suit ?